VINCENTE MOREL *v.* COMMISSIONER
OF PUBLIC HEALTH
(SC 16570)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued September 27—officially released December 31, 2002

*Paul J. Lahey* and *Daniel Shapiro*, assistant attorneys general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*,

assistant attorney general, for the appellant (defendant).

*Thomas K. McDonough,* for the appellee (plaintiff).

BORDEN, J. The dispositive issue in this appeal[1] is whether the trial court lacked subject matter jurisdiction over the plaintiff's appeal from the decision of the defendant, under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., because that decision was not a final decision in a contested case within the meaning of § 4-166 (2) and (3).[2] The defendant, the commissioner of public health, appeals from the judgment of the trial court sustaining the appeal by the plaintiff, Vincente Morel, from the administrative decision of the defendant disqualifying the plaintiff from participating as a vendor in a certain federally funded nutrition program. The defendant claims that the trial court lacked subject matter jurisdiction over the plaintiff's appeal because the decision appealed from was not a final decision in a contested case.[3]

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 4-166 (2) defines " '[c]ontested case' " as "a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include proceedings on a petition for a declaratory ruling under section 4-176 or hearings referred to in section 4-168 . . . ."

General Statutes § 4-166 (3) defines " '[f]inal decision' as "(A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176 or (C) an agency decision made after reconsideration. The term does not include a preliminary or intermediate ruling or order of an agency, or a ruling of an agency granting or denying a petition for reconsideration . . . ."

[3] We note that, in the trial court, the defendant did not challenge the subject matter jurisdiction of the court in any way. Nonetheless, as we often have held, the lack of subject matter jurisdiction in the trial court may not

We conclude that the decision of the defendant was not a final decision in a contested case within the meaning of the UAPA because the hearing held by the defendant was not statutorily required. Therefore, the trial court lacked subject matter jurisdiction. Accordingly, we reverse the judgment of the trial court.

The defendant, after a hearing, disqualified the plaintiff for three years from participating in the program at issue and fined the plaintiff. The plaintiff appealed from that decision to the trial court, which sustained the appeal and remanded the matter to the defendant for further proceedings.

The record discloses the following facts and procedural history. The plaintiff, who owns a food store in Bridgeport known as Juncos Market, was a licensed vendor under the federal Special Supplemental Food Program for Women, Infants and Children, which is known as the WIC program. The WIC program is administered by the defendant pursuant to General Statutes § 19a-59c,[4] §§ 19a-59c-1 through 19a-59c-6 of the Regulations of Connecticut State Agencies, and the United States Department of Agriculture regulations, 7 C.F.R. §§ 246.1 through 246.28 (1999). As a vendor in the WIC program, the plaintiff was authorized to provide approved food items to WIC participants in exchange for WIC vouchers.

In December, 1999, the defendant notified the plaintiff of his disqualification from the WIC program for

be waived, and may be asserted on appeal to this court despite its lack of presentation to the trial court. *Goodson* v. *State*, 232 Conn. 175, 179, 653 A.2d 177 (1995); see generally *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002).

[4] General Statutes § 19a-59c provides: "The Department of Public Health is authorized to administer the federal Special Supplemental Food Program for Women, Infants and Children in the state, in accordance with federal law and regulations. The Commissioner of Public Health may adopt regulations, in accordance with the provisions of chapter 54, necessary to administer the program."

three years, and of a $500 fine, for improprieties revealed by WIC "compliance purchases"[5] on November 20, 1998, and September 25 and 29, 1999. Pursuant to the plaintiff's request, a hearing officer conducted a hearing. The defendant adopted the report of the hearing officer, issued a decision finding that the plaintiff had violated the regulations on the three dates in question, and imposed an automatic three year disqualification as required by the state regulations for the type of violations involved and a $500 fine.

The plaintiff appealed from the defendant's decision to the trial court. The plaintiff claimed that: (1) a certain compliance purchase report improperly had been admitted into evidence; (2) the imposition of an automatic three year penalty for class A violations, into which category the plaintiff's conduct fell, was contrary to federal regulations governing vendor abuse; and (3) an adverse inference should have been drawn from the failure of the defendant to produce certain evidence.

The trial court determined that the report of the investigator regarding the November, 1998 compliance purchase, which had been admitted into evidence, was not sufficiently trustworthy to constitute substantial evidence of that violation, and that there was insufficient evidence to support the finding of that violation. The trial court also determined that no adverse inference was required from the failure of the defendant to produce certain evidence. The trial court also determined, however, that the imposition of an automatic three year disqualification, based on the state regulations imposing such a penalty for the class of violations established by the evidence, was contrary to the federal regulations addressing vendor abuse. In the trial court's

[5] A "compliance purchase" apparently is a purchase made by an undercover agent of the defendant using WIC vouchers, the purpose of which is to determine whether the vendor is selling nonapproved items for those vouchers.

view, the federal regulations required that the defendant, in imposing the penalty for the violations found, must exercise his discretion on a case-by-case basis and, therefore, was required to "reevaluate the penalties for the class A violations which occurred on September 25, 1999, and September 29, 1999, in accordance with the requirements of 7 C.F.R. § 246.12k (ii)." Accordingly, the court rendered judgment sustaining the appeal on that issue only, and remanded the matter to the defendant for further proceedings consistent with its opinion. This appeal followed.

I

We first address a preliminary question regarding our own subject matter jurisdiction over the defendant's appeal from the judgment of the trial court.[6] That question is whether the remand by the trial court was itself a final judgment for purposes of appeal to this court. We conclude that the trial court's remand was a final judgment for purposes of appeal.

In *Schieffelin & Co.* v. *Dept. of Liquor Control*, 202 Conn. 405, 410, 521 A.2d 566 (1987), we held that, for purposes of appeal to this court, a trial court's remand of an administrative appeal under the UAPA was subject to the finality test articulated by the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), namely, "whether the trial court's order so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) In applying that test to a judicial remand in a UAPA appeal, we distinguished "between two kinds of administrative remands. A trial court may conclude that an administrative ruling was in error and order further administrative proceedings on that very issue. In such circumstances, we have held the judicial order to be a final judgment, in

---

[6] This court sua sponte directed the parties to brief the question of whether the trial court's remand was a final judgment for purposes of appeal.

order to avoid the possibility that further administrative proceedings would simply reinstate the administrative ruling, and thus would require a wasteful second administrative appeal to the Superior Court on that very issue. See, e.g., *Watson* v. *Howard*, 138 Conn. 464, 468, 86 A.2d 67 (1952); *Santos* v. *Publix Theatres Corporation*, 108 Conn. 159, 161, 142 A. 745 (1928). A trial court may alternatively conclude that an administrative ruling is in some fashion incomplete and therefore not ripe for final judicial adjudication. Without dictating the outcome of the further administrative proceedings, the court may insist on further administrative evidentiary findings as a precondition to final judicial resolution of all the issues between the parties. See General Statutes § 4-183 (e). Such an order is not a final judgment. See, e.g., *Burdick* v. *United States Finishing Co.*, 128 Conn. 284, 288–89, 22 A.2d 629 (1941); *Luliewicz* v. *Eastern Malleable Iron Co.*, 126 Conn. 522, 524, 12 A.2d 779 (1940)." *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 410.

In *Schieffelin & Co.*, the plaintiff had sought statutorily required permission to terminate certain liquor distributorships held by certain corporate defendants. Id., 406–407. The administrative agency, however, did not rule on whether the plaintiff had established the requisite good cause for such terminations, because the plaintiff had failed to comply with a procedural notice requirement. Id., 407. The plaintiff filed an administrative appeal under the UAPA to the trial court, which ruled that: (1) the plaintiff had complied with the notice requirement; but (2) on the state of the record, the court could not rule on whether the plaintiff had established the requisite good cause for termination. Id., 407–408. It therefore remanded the case to the agency for an evidentiary inquiry into the issue of good cause. Id., 411. Upon subsequent appeal to this court by the defendants, we held, applying the standard articulated pre-

viously in this opinion, that the trial court's remand order was not a final judgment for purposes of appeal to this court. Id., 412. We viewed the case as closely resembling "the category of cases in which, because the administrative record is incomplete, appellate review of a judicial order of administrative remand is premature." Id., 410. Thus, we held that the remand order was not a final judgment "[b]ecause there [had] not yet been a definitive administrative determination of the plaintiff's claimed right to terminate the distributorships of the individual defendants . . . ." Id., 411–12.

We recently reaffirmed the *Schieffelin & Co.* rule in *Lisee* v. *Commission on Human Rights & Opportunities*, 258 Conn. 529, 537–38, 782 A.2d 670 (2001). In *Lisee*, the plaintiff had filed a complaint with the named defendant, the administrative agency, claiming that the corporate defendant, Aetna Retirement Services, Inc., her former employer, had discriminated against her based on her disability. Id., 530–31. The agency found no probable cause for the plaintiff's claim and dismissed her complaint. Id., 531–32. The plaintiff appealed to the trial court, to which, prior to the hearing on the appeal, the agency had made a request that the matter be remanded for further investigation and a new probable cause determination, based upon its assertion that it had failed to interview certain witnesses and review certain records. Id., 532. The trial court granted the agency's request and remanded the case for further evidence, pursuant to General Statutes § 4-183 (h).[7] Id., 533.

---

[7] General Statutes § 4-183 (h) provides: "If, before the date set for hearing on the merits of an appeal, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court."

Upon the employer's appeal to this court, we concluded that the trial court's remand was not a final judgment for purposes of appeal to this court. Id., 534. In reaching that conclusion, we first addressed the meaning of the final sentence of § 4-183 (j), which provides: "For purposes of this section, a remand is a final judgment."[8] The employer argued that, under the plain meaning of that sentence, the court's remand was a final judgment, because it was a remand under § 4-183 (j). Id., 535. We held that, notwithstanding the use of the word "*section*," rather than the word "*subsection*," the legislature had not intended, in enacting that sentence in 1988, "to overrule our conclusion in *Schieffelin* [*& Co.*] that, for the purpose of determining appellate jurisdiction, rulings in administrative appeals generally are subject to [the second prong of] the *Curcio* final judgment test. *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 202 Conn. 409." *Lisee* v. *Commission on Human Rights & Opportunities*, supra, 258 Conn. 541. Rather, we concluded that "the legislature intended to codify that decision as it applies to remands after rulings on the merits of an administrative appeal." Id., 541–42.[9]

---

[8] General Statutes § 4-183 (j) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

[9] We wish to clarify that, in concluding that the final sentence of § 4-183 (j) was intended to codify the *Schieffelin & Co.* test, and to be read as if it used the word "subsection," rather than the word "section," we did not intend to suggest that the legislature intended a different rule of finality to apply to other provisions of the UAPA. Indeed, the remainder of our reasoning, and the fact that we then went on to apply that test to the court's remand

We noted that the sentence at issue followed a sentence that referred to the court sustaining the appeal upon a finding of prejudice. Id., 539. Applying that test, we concluded that the trial court's remand under § 4-183 (h) was not a final judgment for purposes of appellate jurisdiction because the court had "concluded that, on the basis of the inadequacy of the administrative record, it could not rule on the merits of the plaintiff's appeal without additional fact-finding by the commission." Id., 542.

It is important to note that, in both *Schieffelin & Co.* and *Lisee*, our determination regarding the finality of the trial court's remand depended on the scope of the administrative proceedings that were contemplated to follow the remand. In *Schieffelin & Co.*, the court remanded the matter to the agency for it to rule on the substantive merits of the plaintiff's request to terminate the distributorship, a question that initially had been presented to, but never ruled on by, the administrative agency. *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 202 Conn. 407–408. Thus, the court's remand, which was not a final judgment, was an instance of the court insisting "on further administrative evidentiary findings as a precondition to final judicial resolution of all the issues between the parties." Id., 410. Similarly, in *Lisee*, the court remanded the matter to the administrative agency for it to determine, on the basis of additional evidence that it intended to produce, the substantive question of whether the plaintiff had been discriminated against, based on her disability—a question that the agency *had* decided but now wished to reexamine in light of the additional evidence. *Lisee* v. *Commission on Human Rights & Opportunities*, supra, 258 Conn. 532.

under § 4-183 (h); *Lisee* v. *Commission on Human Rights & Opportunities*, supra, 258 Conn. 542; indicate to the contrary.

Thus, both cases are properly read as holding that the finality of a trial court remand in a UAPA appeal depends on the nature and scope of the remand, and that question is to be determined on a case-by-case basis under the *Schieffelin & Co.* test. That test cannot, however, be applied mechanistically. Underpinning it is the question of whether the administrative record is incomplete so as to render "appellate review of a judicial order of administrative remand . . . premature." *Schieffelin & Co.* v. *Dept. of Liquor Control,* supra, 202 Conn. 410. Also underpinning the test is the recognition that, where a trial court concludes that an administrative ruling was in error and orders further administrative proceedings on that very issue, the order is final, so as "to avoid the possibility that further administrative proceedings would simply reinstate the [previous] administrative ruling, and thus would require a wasteful second administrative appeal to the Superior Court on that very issue." Id. Finally, the *Schieffelin & Co.* test is rooted in the second prong of the *Curcio* test, which asks whether the order so concludes the rights of the parties that further proceedings cannot affect them. Id. Thus, an essential part of the test is the effect that the remand has on the rights of the party who seeks to appeal from it.

Applying that test to the present case, we conclude that the trial court's judgment was final for purposes of appeal. The court ruled on the substance of the plaintiff's appeal in all respects. Additionally, the remand comes squarely within the language of the last sentence of § 4-183 (j), as we interpreted it in *Lisee,* in that it was a remand under that subsection, in an appeal in which the court found prejudice to the plaintiff and sustained his appeal. Furthermore, the effect on the rights of the defendant is final, because he is now precluded from imposing the penalty in accordance with the applicable state regulations, and no further proceed-

ings can affect that right. Finally, the remand derived from the trial court's legal conclusion that the defendant had employed an improper legal standard in imposing the penalty. Thus, the court concluded that the administrative ruling on the penalty "was in error and order[ed] further administrative proceedings on that very issue." Id. Indeed, if the trial court's judgment were not considered final, it is entirely possible that, upon a remand, the defendant, in exercising the case-sensitive discretion ordered by the trial court, would simply impose the same three year penalty, and then seek to appeal, raising the claim that the trial court's earlier ruling was improper. This scenario "would require a wasteful second administrative appeal to the Superior Court on that very issue." Id.

## II

Having concluded that we have subject matter jurisdiction over the defendant's appeal from the trial court's remand, we turn to the question of whether the trial court had jurisdiction over the plaintiff's appeal from the defendant's decision. The defendant claims that the court lacked such jurisdiction because that decision was not a final decision in a contested case, within the meaning of the UAPA. We agree.

Section 4-183 (a) of the UAPA limits the right to an administrative appeal to a "final decision . . . ."[10] Insofar as is relevant to this case, § 4-166 (3) (A) defines a " '[f]inal decision' " as "the agency determination in a contested case . . . ."[11] Section 4-166 (2) defines a " '[c]ontested case' " as "a proceeding, including but not restricted to rate-making, price fixing and licensing,

[10] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[11] See footnote 2 of this opinion.

in which the legal rights, duties or privileges of a party are required *by statute* to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ."[12] (Emphasis added.) By now it is well established that one requirement for a final decision in a contested case, upon·which the jurisdiction of the trial court rests in a UAPA appeal, is that any hearing held be required by *statute*, not merely by agency rule, regulation or policy. *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 704–705, 620 A.2d 780 (1993); see also *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 800–801, 629 A.2d 367 (1993).

It is useful to begin with a brief overview of the WIC program. The WIC program is based on a congressional finding "that substantial numbers of pregnant, postpartum, and breastfeeding women, infants, and young children from families with inadequate income are at special risk with respect to their physical and mental health by reason of inadequate nutrition or health care, or both. It is, therefore, the purpose of the program . . . to provide . . . supplemental foods and nutrition education through any eligible local agency that applies for participation in the program." 42 U.S.C. § 1786 (a). Consequently, the federal statute authorizes the Secretary of Agriculture (secretary) to grant federal funds to state agencies that, in turn, arrange with the eligible local agencies to provide such supplemental foods and nutrition education, free of charge, to the income-eligible women and children. 42 U.S.C. § 1786 (c). The federal statute also mandates that, in order to be eligible to receive the federal funds, both the state and local agencies involved in the administration of the WIC program comply with an elaborate set of standards and procedures set forth by the secretary. 42 U.S.C. § 1786 (f). The secretary has set forth those standards and

---

[12] See footnote 2 of this opinion.

procedures in federal regulations, including detailed requirements specifying those supplemental foods that are eligible for distribution to the participants. 7 C.F.R. § 246 (1999).

The state agency administering the WIC program in Connecticut is the department of public health (department) pursuant to § 19a-59c. See footnote 4 of this opinion. One method of carrying out the distribution of eligible foods is for the local agency to enroll eligible participants and provide them with WIC vouchers, which are described in the state regulations as "WIC checks"; Regs., Conn. State Agencies § 19a-59c-4 (*l*); and for the department to enter into agreements with local food vendors, who meet certain specified requirements, to sell only those specified foods to participants in exchange for the WIC vouchers. Regs., Conn. State Agencies § 19a-59c-5. The authorized vendors then submit the vouchers to the department for payment. Id.

With this background in mind, we turn to the question of whether the hearing provided to the plaintiff by the defendant was statutorily required. We conclude that it was not.

We note first, as the defendant asserts without challenge by the plaintiff, that there is no federal statute requiring a hearing before terminating participation by an authorized vendor for vendor abuse.[13] There is no question, however, that the federal *regulations* governing the WIC program require an administrative hearing before a vendor may be disqualified from participation in the program based upon a violation of its provisions. Those regulations provide that the "State agency shall

---

[13] Indeed, we never have decided whether a hearing required by a *federal statute* would satisfy the definition of a "contested case" under the UAPA. See *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 803 n.14 (assuming without deciding that federal statute would satisfy definition of "contested case" under UAPA).

provide a hearing procedure whereby a food vendor or local agency adversely affected by a State or local agency action may appeal the action." 7 C.F.R. § 246.18 (a) (1999).[14] The defendant provided the hearing to the plaintiff pursuant to this regulation.

The only possible statutory basis for a hearing, however, is § 19a-59c, which provides as follows: "The Department of Public Health is authorized to administer the federal Special Supplemental Food Program for Women, Infants and Children in the state, in accordance with federal law and regulations. The Commissioner of Public Health may adopt regulations, in accordance with the provisions of chapter 54, necessary to administer the program." See footnote 4 of this opinion. We agree with the defendant that this statutory provision does not provide an adequate basis for concluding that the hearing provided by the federal regulations is statutorily required, within the meaning of our jurisprudence interpreting the UAPA.

We assume, without deciding, as the plaintiff suggested at oral argument before this court, that although the statutory language is merely that of authorization rather than of mandate, § 19a-59c means that, if the state decides to participate in the WIC program, as it has done, it must do so in accordance with federal regulations. That fact does not lead to the conclusion, however, that the hearing held in the present case was mandated by this state statute within the meaning of § 4-166 (2).

The source of the hearing requirement in the present case was the federal regulation, not the state statute. Put

---

[14] Our examination of the state regulations, however, discloses that the only hearing procedure provided therein is limited to the instance in which a vendor has been disqualified and challenges that disqualification on the ground that it would impose an undue hardship. In that instance, "[t]he vendor may request a hearing for the sole purpose of arguing the issue of undue hardship." Regs., Conn. State Agencies § 19a-59c-6 (c) (2) (G).

another way, the state statute that required compliance with federal regulations, which in turn required a hearing, did not mandate a hearing within the meaning of § 4-166 (2). That two step process is simply too slim a statutory reed to support a conclusion that the hearing is statutorily required under the UAPA.

Section 19a-59c is analogous to a state statute that mandates or authorizes a state departmental commissioner to issue regulations to carry out the purposes of a state program or policy. See, e.g., General Statutes § 22a-1g (mandating that commissioner of environmental protection adopt regulations to coordinate state agencies' actions affecting environment); General Statutes §§ 21a-9 and 21a-115 (authorizing commissioner of consumer protection, with director of agricultural experiment station, to promulgate regulations for Uniform Food, Drug and Cosmetic Act). A hearing provided pursuant to a state regulation, however, is not statutorily required for purposes of a final decision under the UAPA. "Although an agency rule, policy or regulation may require a hearing, that hearing will not qualify the proceedings as a contested case unless the agency is *statutorily* required to determine the legal rights or privileges of the party aggrieved in that proceeding." (Emphasis in original.) *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 704–705. Implicit in this conclusion is the notion that this is true, regardless of the fact that a state statute authorizes or mandates the agency to issue regulations to carry out the provisions of the statute, because an agency's regulatory power derives only from some authorizing or empowering statute. See *Salmon Brook Convalescent Home* v. *Commissioner on Hospitals & Health Care*, 177 Conn. 356, 363, 417 A.2d 358 (1979) ("[t]he power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the

legislature as expressed by the statute"). In other words, any state regulation necessarily finds its authority in a state statute. Therefore, if, when a state statute provides for regulatory authority, and pursuant to that authority the regulatory agency provides by regulation for a hearing, that hearing is not statutorily required, a fortiori when a state statute authorizes or mandates compliance with federal regulations, one of which requires a hearing, the hearing is not statutorily required for purposes of the UAPA.

Indeed, in a very real sense, the language of § 19a-59c authorizing the department to administer the federally funded WIC program "in accordance with federal law and regulations" is surplusage because the state could not participate in the program except in accordance with federal law, including federal regulations, whether or not the state authorizing statute specifically said so. It is well established federal law that the federal government may condition state receipt of money on compliance with federal mandates, as has been done with respect to the WIC program. See *South Dakota* v. *Dole*, 483 U.S. 203, 208, 107 S. Ct. 2793, 97 L. Ed. 2d 171 (1987) (federal government may constitutionally condition receipt of federal funds for highway safety on state's adoption of legal drinking age of twenty-one years). By accepting the funds, the state was required to comply with all federal regulations in any event; see 42 U.S.C. § 1786 (f) (11); irrespective of the specific language of the enabling statute, namely, "in accordance with federal . . . regulations." General Statutes § 19a-59c. Thus, that language is best understood as simply a statutory reference to what would be, in any event, necessarily overarching governing legal principles.

Our conclusion is further supported by the purpose underlying the requirement of the statutory requirement for a hearing in order to be a final decision in a contested

case. That purpose rests on "the desirability of ensuring that the legislature, rather than the agencies, has the primary and continuing role in deciding which class of proceedings should enjoy the full panoply of procedural protections afforded by the UAPA to contested cases, including the right to appellate review by the judiciary. Deciding which class of cases qualif[ies] for contested case status reflects an important matter of public policy and the primary responsibility for formulating public policy must remain with the legislature. *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987); see *Kellems* v. *Brown*, 163 Conn. 478, 491, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973)." (Internal quotation marks omitted.) *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 810–11. Thus, in the present case, the legislature has authorized participation in the WIC program in accordance with federal law and regulations. That authorization merely refers to the requirement of governing federal law in any event, and, as the plaintiff agreed in oral argument before this court, the federal government could at any time amend those regulations to eliminate the requirement for such a hearing. Under these circumstances, we do not read the broad, general language of § 19a-59c as evidencing the kind of legislative policy choice, informing our UAPA, that lies behind the hearing requirement at issue.

Moreover, as the defendant suggests, there are other statutes in which the legislature has used specific statutory language to require him to provide a hearing before taking adverse licensure action. See, e.g., General Statutes § 19a-84 (hearing statutorily required for licensure action against child day care provider); General Statutes § 20-263 (hearing statutorily required for licensure action against hairdresser, cosmetician or nail technician). The contrast between § 19a-59c and those stat-

utes is persuasive evidence of a lack of a similar legislative purpose to impose by statute a hearing requirement for vendors in the WIC program.

The judgment is reversed and the case is remanded to the trial court with direction to dismiss the appeal.

In this opinion the other justices concurred.