## TOWN OF EAST HAMPTON *v.* DEPARTMENT OF PUBLIC HEALTH
### (AC 23275)

Flynn, West and McLachlan, Js.

(*One judge dissenting*)

Argued May 29—officially released November 25, 2003

*Jean M. D'Aquila,* for the appellant (plaintiff).

*Richard J. Lynch,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Rosemary M. McGovern,* assistant attorney general, for the appellee (defendant).

*Opinion*

McLACHLAN, J. The plaintiff, the town of East Hampton (town), appeals from the judgment of the trial court rendered after the granting of the motion filed by the defendant, the department of public health (department), to dismiss the plaintiff's administrative appeal on the ground that the court lacked subject matter jurisdiction pursuant to the Uniform Administrative Procedure Act (UAPA).[1] On appeal, the town claims that (1) the court improperly concluded that General Statutes (Rev. to 1999) § 25-36 (a) did not confer a right to a direct appeal from the department's orders issued pursuant to General Statutes §§ 25-33g and 25-33h, inde-

---

[1] See General Statutes § 4-166 et seq.

pendent of the final decision requirement of General Statutes § 4-183, and (2) even if § 25-36 (a) did not confer a right to a direct appeal, the court improperly concluded that a right of appeal did not exist because the department orders appealed from constituted final decisions as required by § 4-183 and within the meaning of the UAPA.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the claims on appeal. The department is a state agency authorized and required by General Statutes §§ 25-33c through 25-37 to administer and to coordinate the planning of public water supply systems within the state. In performing that function, the department delineates the boundaries of public water supply management areas. See General Statutes § 25-33e. For each such management area, the department convenes a water utility coordinating committee (coordinating committee), which implements the planning process. Pursuant to General Statutes § 25-33f, each coordinating committee consists, inter alia, of one representative from each public water system with a source of water supply or a service area within the public water supply management area. The town operates a public water system within the Southeastern Connecticut water supply management area and is subject to the planning process implemented by the Southeastern Water Utility Coordinating Committee (water committee). Pursuant to § 25-33g, the water committee is required to establish and recommend to the department exclusive service area boundaries for each public water supply system within its public water supply management area.[3] Pursuant to § 25-33h, the water commit-

---

[2] See General Statutes §§ 4-183, and 4-166 (2) and (3).

[3] Exclusive service area means an area in which public water is supplied by one system. See General Statutes § 25-33d (c). The system that is designated as the exclusive service area provider for a particular area is "responsible for providing adequate service as requested by consumers and under terms otherwise provided by statute, regulation and ordinance within their exclusive service area boundaries within a reasonable time frame . . . ." Regs., Conn. State Agencies § 25-33h-1 (k) (2).

tee is further required to recommend to the department a proposed coordinated water system plan for its management area. In accordance with those requirements, the water committee submitted to the department a report recommending exclusive service area boundaries and a proposed coordinated water system plan for the town, which the department subsequently approved and issued orders with respect thereto.

The town appealed from the department's orders to the Superior Court, pursuant to the applicable agency appeal procedure set forth in § 25-36 (a). The department thereafter filed a motion to dismiss the appeal, claiming that the court lacked subject matter jurisdiction because the department orders appealed from did not constitute final decisions within the meaning of the UAPA, as required by § 4-183. The court agreed and, accordingly, granted the department's motion to dismiss. This appeal followed.

Our standard of review for a challenge to a ruling on a motion to dismiss is well settled. "A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff *cannot* as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bailey* v. *Medical Examining Board for State Employee Disability Retirement*, 75 Conn. App. 215, 219, 815 A.2d 281 (2003).

I

The town first claims that the court improperly concluded that § 25-36 (a) did not confer a right to a direct

appeal of the department's orders independent of the final decision requirement of § 4-183. We disagree.

"It is well established that the right to appeal an administrative action is created only by statute and a party must exercise that right in accordance with the statute in order for the court to have jurisdiction." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 64 Conn. App. 134, 138, 779 A.2d 817, appeal dismissed, 260 Conn. 180, 799 A.2d 294 (2002). As such, our task is to determine whether orders of the department issued pursuant to §§ 25-33g and 25-33h are appealable. Under the clear weight of existing authority, they are not. See, e.g., *Morel* v. *Commissioner of Public Health*, 262 Conn. 222, 234, 811 A.2d 1256 (2002); *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 800–802, 629 A.2d 367 (1993); *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 699–700, 620 A.2d 780 (1993); *Ahern* v. *State Employees Retirement Commission*, 48 Conn. App. 482, 487–88, 710 A.2d 1366 (*Lavery, J.*, concurring), cert. denied, 245 Conn. 911, 718 A.2d 16 (1998); see *Bailey* v. *Medical Examining Board for State Employee Disability Retirement*, supra, 75 Conn. App. 221.

The town argues that the legislative history of §§ 25-33g and 25-33h compels the conclusion that an appeal is permissible even though no *statutorily required* hearing was provided thereunder. The town cites specifically a remark by Senator Eric R. Benson, who stated that if a water company was not satisfied by the decision reached by the coordinating committee, an appeal would be available "through the [Uniform Administrative Procedure Act] . . . ." 28 S. Proc., Pt. 16, 1985 Sess., p. 5242, remarks of Senator Eric R. Benson.[4]

---

[4] General Statutes § 25-36 (a) applies to part III of chapter 474 of the General Statutes, which includes General Statutes §§ 25-32 through 25-54, inclusive.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted;

emphasis in original; internal quotation marks omitted.) *State* v. *Courchesne,* 262 Conn. 537, 577–78, 816 A.2d 562 (2003).[5]

The bare text of § 25-36 (a) clearly supports the meaning that an appeal taken pursuant thereto must comply with the requirements of § 4-183.[6] Specifically, § 25-36 (a) provides in relevant part: "Except as provided otherwise in this part, any person or corporation aggrieved by any order of the Department of Public Health made under the provisions of part III of this chapter, *may appeal therefrom in accordance with the provisions of section 4-183,* except venue shall be in the judicial district in which the source of the water or ice supply is located. . . ." (Emphasis added.) Section 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

Section 4-166 (3) (A) defines a "final decision" as "the agency determination in a contested case . . . ."[7]

---

[5] We are mindful of Public Acts 2003, No. 03-154, § 1 (effective October 1, 2003), which provides that the "meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plan and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." We take no position as to the effect of that legislation on *State* v. *Courchesne,* supra, 262 Conn. 537.

[6] The legislative history of General Statutes § 25-36 (a) reveals that in 1977, the legislature added the language that appeals brought pursuant thereto must be taken "in accordance with the provisions of section 4-183 . . . ." Public Acts 1977, No. 77-603, § 108. That was an attempt to make uniform all appeals from administrative agency decisions. See 20 H.R. Proc., Pt. 13, 1977 Sess., p. 5252, remarks of Representative Ernest N. Abate.

[7] General Statutes § 4-166 (3) defines "final decision" as "(A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176 or (C) an agency decision made after reconsideration. The term does not include a preliminary or intermediate ruling or order of an agency, or a ruling of an agency granting or denying a petition for reconsideration . . . ."

Section 4-166 (2) defines a "contested case" as "a proceeding . . . in which the legal rights, duties or privileges of a party are *required by statute* to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ."[8] (Emphasis added.) "That is, the UAPA mandates, as a predicate for contested case status, that a party must have enjoyed a statutory right to a hearing." *Bailey* v. *Medical Examining Board for State Employee Disability Retirement*, supra, 75 Conn. App. 221; see also *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 700.[9] In the present case, both §§ 25-33g and 25-33h provided for the solicitation of comments, but neither statutorily required a hearing.

Had the legislature intended §§ 25-33g and 25-33h to require a hearing, it could have expressly done so. Section 25-36 (a) applies to part III of chapter 474 of the General Statutes, which includes two sections that specifically require a hearing. See General Statutes §§ 25-32g and 25-34b. "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a differ-

---

[8] The explanation of the "contested case" requirement has been succinctly integrated into a three part test: "(1) whether a legal right, duty or privilege is at issue, (2) and is *statutorily* required to be determined by the agency, (3) through an opportunity for hearing or in which a hearing is in fact held." (Emphasis in original; internal quotation marks omitted.) *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 800–801.

[9] The nature of the relationship between an agency appeal provision and General Statutes § 4-183 has routinely been construed as complementary, such that the requirements of § 4-183 serve the gatekeeping function of limiting the agency determinations that are subject to judicial review. See, e.g., *Coalition to Save Horsebarn Hill* v. *Freedom of Information Commission*, 73 Conn. App. 89, 92, 806 A.2d 1130 (2002) (characterizing requirements of § 4-183 as "complementary" of General Statutes § 1-206 (d), the Freedom of Information Act appeal provision), cert. denied, 262 Conn. 932, 815 A.2d 132 (2003); *Toise* v. *Rowe*, 243 Conn. 623, 626, 707 A.2d 25 (1998) (determining that § 4-183 sets qualifications for appealability of agency determinations to Superior Court).

ent intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003). The difference in the language used in §§ 25-33g and 25-33h and in those statutes that expressly require a hearing is persuasive evidence of a lack of similar legislative intent to impose the same requirement.

The town's reliance on *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 788 A.2d 1158 (2002), for the proposition that if we were to construe § 25-36 (a) as conditioning the right of appeal on satisfaction of the final decision requirement, § 25-36 (a) would be rendered meaningless, is misplaced. In *Nizzardo*, the relationship between an agency appeal provision and the final decision requirement of § 4-183 was examined. The appeal provision at issue in *Nizzardo* provided in relevant part: "Any person aggrieved by any decision of the State Traffic Commission hereunder may appeal therefrom *in accordance with the provisions of section 4-183*, except venue for such appeal shall be in the judicial district in which it is proposed to operate such establishment. . . ." (Emphasis added.) General Statutes § 14-311 (e).

After first recognizing the general rule that for an administrative decision to qualify as a final decision, and therefore be appealable, there must be a hearing required by statute, the court nevertheless determined that an appeal could be brought pursuant to § 14-311 even though that statute did not require a hearing. The court reasoned that if it construed § 14-311 (e) as imposing that usual requirement, "the [appeal] provision would be meaningless, because the very statute to which it refers does not require a hearing. Thus, there

would never be a permissible appeal thereunder." *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 140 n.11.

That conclusion was based on the fact that the appeal provision at issue in *Nizzardo* was adopted simultaneously with and expressly limited in its applicability to one statute, § 14-311, which did not require a hearing. As such, the court was faced with the predicament that if it imposed the usual requirement of a statutorily required hearing, there could *never* be a permissible appeal under § 14-311 (e), and the entire subsection would be rendered meaningless. In contrast, § 25-36 (a) expressly applies to all of part III of chapter 474 of the General Statutes, which encompasses §§ 25-32 through 25-54, inclusive.[10] Although many of the sections contained within part III do not require a hearing, there are sections that do and, therefore, permissible appeals may arise under § 25-36 (a).[11]

---

[10] Specifically, General Statutes § 25-32g, concerning department orders to correct immediate threats to public water supplies, provides in relevant part that "[t]he commissioner shall . . . hold a hearing to provide the person an opportunity to be heard . . . ." General Statutes § 25-34 (b), concerning the department's orders to protect the water or ice supply from pollution, provides in relevant part that "[u]pon receipt of [a request for a hearing] the commissioner shall grant a hearing as soon thereafter as practicable or within ten business days if the order requires immediate compliance. . . ."

[11] Indeed, this court has implicitly recognized the validity of a statutory scheme in which the agency appeal provision, when read in conjunction with the final decision requirement of General Statutes § 4-183, prohibits appeals from statutes that are expressly included in the scope of the appeal provision. In *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, supra, 64 Conn. App. 139 n.3, the agency appeal provision was applicable to " 'any order, authorization or decision of the Department of Public Utility Control . . . .' " Although some of the orders, authorizations and decisions to which the appeal provision applied were appealable because they satisfied the final decision requirement of § 4-183, others did not satisfy that requirement and, therefore, could never be appealed. Although the court construed the relationship between the agency appeal provision and the requirements of § 4-183, the court did not suggest that the nature of the statutory scheme rendered the appeal provision meaningless with respect to those orders, authorizations and decisions that could not satisfy the final decision requirement.

The narrow exception carved out in *Nizzardo* is inapplicable to the present case because § 25-36 (a) is not rendered meaningless by requiring that a party appealing thereunder must comply with the final decision requirement of § 4-183. Senator Benson's remark is not compelling enough to overcome either the plain language of the statute, which makes clear that § 4-183 (a) places the jurisdictional requirement of a final decision on appeals brought pursuant to § 25-36 (a), or the policy reasons for such requirement.

We conclude that the department orders issued pursuant to §§ 25-33g and 25-33h did not statutorily require a hearing and, therefore, did not constitute appealable final decisions in a contested case, within the meaning of § 4-183. We accordingly conclude that the court correctly decided that it lacked subject matter jurisdiction to entertain the town's appeal.

II

The town's second claim is that even if § 25-36 (a) did not expressly confer a right to a direct appeal, the court improperly failed to conclude that a right of appeal nevertheless existed because the department orders appealed from constituted final decisions as required by § 4-183 and within the meaning of the UAPA. The town reasons that because §§ 25-33g and 25-33h both provide for the solicitation of comments, the hearing requirement has been satisfied because the commenting process is tantamount to a hearing. We disagree.

This court has emphasized that when a hearing is gratuitously held but not statutorily required, the contested case requirement is not satisfied. See *Dadiskos* v. *Connecticut Real Estate Commission*, 37 Conn. App. 777, 782, 657 A.2d 717 (1995). Stated differently, even if a "proceeding" was in fact held, it lacked the essential element of a "right to be heard," and, thus, remained

gratuitous and did not qualify as a "statutorily required hearing." As a result, there could not have been a contested case to which the provisions of the UAPA might apply. Accordingly, the court had no jurisdiction to entertain the plaintiff's appeal and the dismissal was proper.

The judgment is affirmed.[12]

In this opinion WEST, J., concurred.

FLYNN, J., dissenting. I respectfully dissent from the result reached by the majority.

First, I do so because if jurisdiction is exercised to review the claim of the plaintiff town of East Hampton (town), there is a substantial issue to be decided, namely, whether a special act granting the municipality the right to provide water prevails over a general statute by which the commissioner of public health purports to give that right to others. The town, for almost forty years, was authorized by 31 Spec. Acts 206, No. 216 (1963), to provide water service within its boundaries, and there has been no express repeal of this special act. The special act expressly gives to the municipality the entire geographical area of East Hampton as its service area. See id., § 1. "[I]t is a canon of statutory construction that a later statute general in its terms and not expressly repealing a prior special or specific statute will be considered as not intended to affect

---

[12] We reach that conclusion reluctantly. We recognize some expression of legislative intent for a right of appeal with respect to General Statutes §§ 25-33g and 25-33h, and we agree that such right of appeal would obviate the potential for mischief raised by the legislature. The bare text of General Statutes § 25-36 (a), however, simply cannot bear such a construction in light of the weight of authority against such a construction. If the legislature indeed intended for a right of appeal to exist for §§ 25-33g and 25-33h, it failed to craft the statutes to effectuate that intent. We further recognize that any reformulation of §§ 25-33g and 25-33h to create appellate rights is the function of the legislature. See *Bhinder* v. *Sun Co.*, 263 Conn. 358, 365, 367, 819 A.2d 822 (2003).

the special or specific provisions of the earlier statute, unless the intention to effect the repeal is clearly manifested or unavoidably implied by the irreconcilability of the continued operation of both." 73 Am. Jur. 2d 464, Statutes § 300 (2001); see also *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 360 n.12, 613 A.2d 254 (1992) ("[b]ecause, in enacting [the statute at issue], the legislature has not shown a manifest intent to repeal [the related special act], to the extent that the provisions of the special act and the general statute are inconsistent, the special act is controlling").

In this case, there has not been any general reference in the legislation itself to indicate that the provisions of General Statutes §§ 25-33g and 25-33h would prevail over any charter provision, special act or ordinance as the legislature knew how to do, and expressly has done, time and time again when adopting legislation that it specifically wanted to supersede prior legislation. See, e.g., General Statutes § 13a-198n ("[n]otwithstanding any provision of the general statutes or any regulation issued pursuant to such statutes or any provision of any special act to the contrary, the [d]epartment of [t]ransportation shall not construct the Route 2-3 access road in the vicinity of Forbes Street, East Hartford"); General Statutes § 16-262o (b) ("[n]otwithstanding the provisions of any special act, the [d]epartment of [p]ublic [u]tility [c]ontrol shall extend the franchise areas of the acquiring water company to the service area of the water company acquired pursuant to this section"); General Statutes § 22a-368 (b) ("[n]otwithstanding any other provision of the general statutes or any special act to the contrary, no person or municipality shall, after July 1, 1982, commence to divert water from the waters of the state without first obtaining a permit for such diversion from the commissioner"); General Statutes § 25-32b ("[n]otwithstanding any other provision

of the general statutes or regulations . . . or special act or municipal ordinance, the [c]ommissioner of [p]ublic [h]ealth may authorize or order the sale, supply or taking of any waters").

In addition, I find it relevant that § 25-33g expressly states that "[i]n establishing such [service area] boundaries the commissioner shall maintain existing service areas and consider the orderly and efficient development of public water supplies . . . ."[1] General Statutes § 25-33g (b). The existing service area, as expressly granted to the town by special act, was not, in this instance, maintained by the commissioner.

Second, if we assume that the defendant's actions constituted an order, the town has a statutory right to an appeal. Both the trial court and the majority opinion refer to the commissioner's action as an "order." Given the consequences of the defendant's actions in conjunction with the assumption that an order was created, I believe that General Statutes (Rev. to 1999) §§ 25-32 (j) and 25-32 (k), now (k) and (*l*), are implicated.[2] The effect of the commissioner's action was to declare a moratorium on any further expansion of the municipal water system to unserved parts of the town, to take away from the municipality those parts of the town which constitute the unserved area and to grant them to another entity. Section 25-32 (j) provides: "The commissioner may issue an order declaring a moratorium on the expansion or addition to any existing public

[1] I find it significant that although the drafters of General Statutes § 25-33g repeated the phrase, "[i]f there is no agreement by the committee" in the two preceding sentences, they did not repeat it in this final sentence, which leads me to the conclusion that the commissioner's obligation to maintain existing service areas applies whether or not an agreement has been reached by the committee.

[2] The provisions contained in General Statutes (Rev. to 1999) § 25-32 (j) and (k) were renumbered and are now contained in General Statutes § 25-32 (k) and (*l*), respectively.

water system that he deems incapable of providing new services with a pure and adequate water supply."

Additionally, § 25-32 (k), now (*l*), provides that "[t]he commissioner may issue, modify or revoke orders as needed to carry out the provisions of part III of this chapter. Except as provided otherwise in this part, such order shall be issued, modified or revoked in accordance with procedures set forth in subsection (b) of section 25-34."

Section 25-34 (b) then sets forth the manner in which a party affected by an order shall be notified and the manner in which such party may challenge that order. Initially, I note that there is no indication in the record that the defendant complied with the notice requirement clearly set forth in § 25-34 (b) by mailing a copy of the challenged order to the town by certified mail. There is, however, an assertion by the town that it repeatedly requested a hearing and was told that a hearing would be held. Paragraph fifteen of the town's complaint alleged: "Representatives of the plaintiff town immediately and periodically prevailed upon the [defendant] to correct the procedural irregularities associated with the [Southeastern Connecticut Water Utility Coordinating Committee's] recommendation and allow the town and the public an opportunity at a public hearing to show the [defendant] why the town of East Hampton should be designated as the exclusive service area provider for water within the town of East Hampton, with the exception of areas currently served by others."[3] If, in fact, it is an order, § 25-34 (b) provides that if a hearing is requested, it shall be granted, and the request for a hearing suffices as a condition precedent to taking an appeal from an order. Furthermore, the hearing contemplated by § 25-34 (b), in which "the recipient of the

[3] When a motion to dismiss is the procedure that is used, the court views all of the allegations contained in the complaint as true in passing on the motion.

order may . . . show why the findings in the order are not based on substantial evidence or that the order is an abuse of discretion," would seem to satisfy the requirements for a "contested case" as that term is defined by General Statutes § 4-166 (2). Additionally, § 25-34 (b) expressly provides that "[a]ny hearing shall be deemed to be a contested case and held in accordance with the provisions of chapter 54."

Third and alternatively, if the commissioner's action approving the plan, which takes away the right of the municipal water company to serve the unserved areas of the town, is viewed as being akin to a "decision" rather than an order, I agree with the third claim of the town. In its third claim, the town contended that the commissioner's decision constituted a final decision in a "contest case," sufficient to meet the definition found in General Statutes § 4-166 (2).[4]

In *Herman* v. *Division of Special Revenue*, 193 Conn. 379, 382, 477 A.2d 119 (1984), our Supreme Court outlined a three part test to be used in determining whether a matter constitutes an appealable "contested case." The first part of the test is whether a legal right, duty or privilege is at issue. Id. Clearly, that is satisfied here because the result of the commissioner's approval of the contested plan resulted in the abrogation of a statutory right of the municipal water company, granted by 31 Spec. Acts 206, No. 216, § 1, to service the entire town.

The second prong requires that the matter statutorily be required to be determined by the agency. Id. That

---

[4] General Statutes § 4-166 (2) defines that term "contested case" to mean "a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include proceedings on a petition for a declaratory ruling under section 4-176 or hearings referred to in section 4-168 . . . ."

prong is satisfied by § 25-33g, which requires the commissioner to set the service area boundaries.

The third and final prong requires that the agency determination be made "after an opportunity for hearing or in which a hearing is in fact held . . . ." Id. This prong, arguably, is satisfied by §§ 25-33g and 25-33h and their requirements that the municipality be given an opportunity to be heard as to the development of this water system plan. The committee, which is charged with advising the commissioner as to the appropriate designation of service areas, was required by §§ 25-33g (b) and 25-33h (b) to solicit comments and to respond to those comments. I agree with the town that this is tantamount to a hearing. I concede that this was not a right to a hearing before the commissioner, but it was statutorily required before the commissioner could act, and it is, therefore, more than the slender reed of a federally mandated hearing that our Supreme Court, in *Morel* v. *Commissioner of Public Health*, 262 Conn. 222, 237, 811 A.2d 1256 (2002), found insufficient to meet the third prong.

Accordingly, I dissent.