TOWN OF MIDDLEBURY ET AL. *v.* DEPARTMENT OF
ENVIRONMENTAL PROTECTION ET AL.
(SC 17332)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued December 2, 2005—officially released July 17, 2007

*Paulann H. Sheets*, for the appellants (plaintiffs).

*Alan M. Kosloff*, with whom was *Mary A. McQueeney*, for the appellee (defendant Towantic Energy, LLC).

*Opinion*

VERTEFEUILLE, J. This appeal arises from the decision of the named defendant, the state department of environmental protection (department), granting seven stationary source air permits to the defendant Towantic Energy, LLC (Towantic), over the objection of the plaintiffs, the town of Middlebury, Preservation Middlebury, Citizens for the Defense of Middlebury, William Stowell and Mira Schachne. The principal issue in this appeal is whether the trial court properly determined that it lacked subject matter jurisdiction over the plaintiffs' appeal because the decision of the department was not a "final decision" in a "contested case," as those terms are defined in General Statutes (Rev. to 2003) § 4-166 (2) and (3) of the Uniform Administrative Procedure Act (act).[1] We affirm the judgment of the trial court.

---

[1] General Statutes (Rev. to 2003) § 4-166 provides in relevant part: "(2) 'Contested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include proceedings on a petition for a declaratory ruling under section 4-176 or hearings referred to in section 4-168;

"(3) 'Final decision' means (A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176 or (C) an agency decision made after reconsideration. The term does not include a preliminary or intermediate ruling or order of an agency, or a ruling of an agency granting or denying a petition for reconsideration . . . ."

During the course of proceedings in the present case, the legislature enacted Public Acts 2004, No. 04-94, § 1, which amended the definition of a "contested case" in § 4-166 (2) as follows: " 'Contested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by *state* statute *or regulation* to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not

The following facts and procedural history are relevant to this appeal. In December, 1998, Towantic applied to the department for seven stationary source air permits for the purpose of constructing and operating a combined cycle gas turbine power plant on a twenty acre parcel of land located in Oxford, approximately 500 feet from the Oxford-Middlebury town border.[2] On April 10, 2000, the plaintiffs intervened in the department's administrative review of Towantic's application pursuant to General Statutes § 22a-19 (a).[3] Thereafter, the department held a public hearing on Towantic's application as required by federal statute and state regulation. See 42 U.S.C. § 7475 (a) (2); Regs., Conn. State Agencies (Rev. to 1998) § 22a-174-3 (j) (5); see also Regs., Conn. State Agencies § 22a-174-2a (c).[4]

include proceedings on a petition for a declaratory ruling under section 4-176, hearings referred to in section 4-168 *or hearings conducted by the Department of Correction or the Board of Parole.*" The italicized language is not used as emphasis, but, rather, to illustrate the newly added language.

All references hereinafter to § 4-166 (2) are to the 2003 revision, unless indicated otherwise.

[2] In addition to the stationary source air permits, Towantic also applied to the department for a water discharge permit. The department granted Towantic's application, and that decision is not at issue in this appeal.

[3] General Statutes § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

[4] Title 42 of the United States Code, § 7475 (a), provides in relevant part: "Major emitting facilities on which construction is commenced

"No major emitting facility on which construction is commenced after August 7, 1977, may be constructed in any area to which this part applies unless . . .

"(2) the proposed permit has been subject to a review in accordance with this section, the required analysis has been conducted in accordance with regulations promulgated by the Administrator, and a public hearing has been held with opportunity for interested persons including representatives

On June 26, 2003, the department granted Towantic's

of the Administrator to appear and submit written or oral presentations on the air quality impact of such source, alternatives thereto, control technology requirements, and other appropriate considerations. . . ."

Section 22a-174-3 (j) (5) of the Regulations of Connecticut State Agencies (Rev. to 1998) provides: "Any person may file, within a thirty (30) day period following the public notice published pursuant to subparagraph 22a-174-3 (j) (2) (B) for a new major stationary source or major modification or any stationary source with a stack height in excess of good engineering practice, a written objection setting forth the basis thereof in detail with the Department opposing the application in its entirety or requesting that specific conditions be attached to it. The objection may be accompanied by a request for a public hearing and the Commissioner shall honor such request. A notice of such public hearing shall be published in a newspaper of general circulation in the affected area. Such notice shall include the date, time and location of the public hearing. Following the close of the public hearing, the Commissioner shall make a decision based on all available evidence, including the record of the public hearing and the recommendation of the hearing examiner, if any, as to whether to approve, deny or conditionally approve the issuance of the permit. Notice of such decision shall be published in a newspaper of general circulation in the affected area. The requirements of this subdivision shall not apply to the owner or operator of a major stationary source or major modification which, while obtaining a permit to construct, obtains internal offsets pursuant to the provisions of subparagraphs (k) (1) (B) or (l) (2) (C) of section 22a-174-3."

During the course of proceedings in the present case, § 22a-174-3 was repealed and the procedural requirements contained therein were recodified at § 22a-174-2a of the Regulations of Connecticut State Agencies, which provides in relevant part: "(c) Public Comments and Hearings

"(1) Written comments may be filed by any person within thirty (30) days following the publication of a notice of a tentative determination pursuant to subsection (b) (3) of this section. The commissioner shall maintain a record of all comments made on the subject application. Any comments concerning the issuance of a Title V permit may be accompanied by a request for a public informational hearing, an adjudicatory hearing, or both. Notwithstanding the provisions of section 22a-3a-6 of the Regulations of Connecticut State Agencies, any comments concerning the issuance of a permit pursuant to section 22a-174-3a of the Regulations of Connecticut State Agencies may be accompanied by a request for a public informational hearing. . . .

"(6) Non-Adjudicative Public Informational Hearings. Following receipt of a written material request and prior to the issuance of a subject permit, or order pursuant to section 22a-174-33 (d) of [the] Regulations of Connecticut State Agencies, the commissioner shall hold a non-adjudicative public informational hearing on:

"(A) An application pursuant to section 22a-174-3a of the Regulations of

application and issued the stationary source air permits. The plaintiffs appealed from the decision of the department to the trial court pursuant to General Statutes § 4-183 (a), which provides in relevant part that a person "who is aggrieved by a *final decision* [of an administrative agency] may appeal to the Superior Court . . . ."[5] (Emphasis added.)

The defendants moved to dismiss the plaintiffs' appeal for lack of subject matter jurisdiction, claiming that the decision of the department was not a final decision in a contested case. Specifically, the defendants observed that § 4-166 (3) (A) defines a final decision as "the agency determination in a contested case," and § 4-166 (2) defines a contested case, in relevant part, as "a proceeding . . . in which the legal rights, duties or privileges of a party are *required by statute* to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ." (Emphasis added.) Because the public hearing in the present case was required to be held by federal statute and state regulation, but not by state statute, the defendants maintained that there was no contested case within the meaning of § 4-166 (2). The trial court agreed with the defendants and, on July 28, 2004, dismissed the

Connecticut State Agencies . . .

"(D) Following the commissioner's receipt of a written request for a public hearing, the commissioner shall hold such hearing if the permit application is for a new major stationary source or a major modification at a major stationary source, or for any stationary source where the stack height exceeds good engineering practice. . . ."

Because none of the parties claim that the public hearing requirements contained in § 22a-174-2a differ materially from those contained in § 22a-174-3 (j) (5), we hereinafter refer to the regulation as currently codified for ease of reference.

[5] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

plaintiffs' appeal for lack of subject matter jurisdiction. This appeal followed.[6]

Subsequent to the trial court's dismissal of the plaintiffs' appeal, Public Acts 2004, No. 04-94, § 1 (P.A. 04-94), which amended the definition of a contested case in § 4-166 (2), became effective. Public Act 04-94, with the newly added language italicized, provides in relevant part: "(2) 'Contested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by *state* statute *or regulation* to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ." Thus, P.A. 04-94 explicitly expands the definition of a contested case to include an agency decision rendered after a hearing required to be held by state regulation.

The plaintiffs claim that the trial court improperly dismissed their appeal for lack of subject matter jurisdiction because the public hearing held by the department on Towantic's application was mandated by federal statute and, therefore, was "required by statute" within the meaning of § 4-166 (2). The plaintiffs further claim that P.A. 04-94 applies retroactively to their appeal because it is a clarification of the original intent of the legislature, or, alternatively, a procedural, rather than a

---

[6] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Subsequent to oral argument in this court, Towantic filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Southern District of New York under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 et seq., which triggered an automatic stay of all proceedings in the present appeal. See 11 U.S.C. § 362 (a). On February 20, 2007, pursuant to a stipulated agreement and agreed upon order entered into by the parties, the Bankruptcy Court lifted the automatic stay to permit the present appeal to proceed "in accordance with Connecticut law as if no bankruptcy petition had been filed." *In re Calpine Corp.*, United States Bankruptcy Court for the Southern District of New York, Docket No. 05-60200 (February 20, 2007).

substantive, change in the law. The defendants respond that the trial court properly dismissed the plaintiffs' appeal because the rationale underlying *Morel* v. *Commissioner of Public Health*, 262 Conn. 222, 233–40, 811 A.2d 1256 (2002), overruled on other grounds by *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 675, 855 A.2d 212 (2004), wherein we concluded that a hearing required to be held by federal regulation does not give rise to a contested case, supports the conclusion that a hearing required to be held by federal statute likewise does not give rise to a contested case. Although the defendants do not dispute that P.A. 04-94, if retroactively applicable to the plaintiffs' appeal, renders the present case a contested case, they claim that P.A. 04-94 does not apply to the plaintiffs' appeal because it implements a substantive change in the law and, therefore, operates prospectively only.[7] We agree with the defendants.

Before addressing the substance of the plaintiffs' claims on appeal, we review briefly our prior precedent construing the definition of a contested case in § 4-166 (2). It is well established that "[t]here is no absolute right of appeal to the courts from the decision of an administrative agency. . . . The [act] grants the Superior Court jurisdiction over appeals of agency decisions only in certain limited and well delineated circumstances." (Citation omitted; internal quotation marks omitted.) *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 699–700, 620 A.2d 780 (1993). Specifically, a party may appeal to the Superior Court only from a final decision in a contested case as provided in §§ 4-183 and 4-166 (2) and (3). See footnotes 1 and 5 of this opinion. Section 4-166 (2) defines a contested case in

---

[7] The defendants also claim that retrospective application of P.A. 04-94 would deprive Towantic of its vested property rights in the stationary source air permits without due process of law. Because we agree with the defendants that P.A. 04-94 applies prospectively only, we do not reach this claim.

relevant part as "a proceeding . . . in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ."

"The test for determining contested case status has been well established and requires an inquiry into three criteria, to wit: (1) whether a legal right, duty or privilege is at issue, (2) and is statutorily required to be determined by the agency, (3) through an opportunity for hearing or in which a hearing is in fact held." *Herman v. Division of Special Revenue*, 193 Conn. 379, 382, 477 A.2d 119 (1984). Under this test, if an agency is not statutorily required to hold a hearing, but nonetheless holds a hearing gratuitously, a contested case does not arise. See *New England Dairies, Inc. v. Commissioner of Agriculture*, 221 Conn. 422, 427–29, 604 A.2d 810 (1992) (no contested case when commissioner of agriculture held hearing on application for milk license, but was not required by statute to do so); *Herman v. Division of Special Revenue*, supra, 386–87 (no contested case when division of special revenue held hearing on request to reinstate patron at jai alai fronton, but was not required by statute to do so); *Taylor v. Robinson*, 171 Conn. 691, 696–97, 372 A.2d 102 (1976) (no contested case when board of parole held hearing on inmate's request for parole, but was not required by statute to do so); see also *Rybinski v. State Employees' Retirement Commission*, 173 Conn. 462, 469–73, 378 A.2d 547 (1977) (no contested case when state employees' retirement commission did not hold hearing on request to change retirement plans and was not required by statute to hold hearing). As this court explained in *Summit Hydropower Partnership v. Commissioner of Environmental Protection*, 226 Conn. 792, 808, 629 A.2d 367 (1993), "[w]hen § 4-166 (2) is read as a whole, it is evident that the phrase 'required by statute to be

determined by an agency after an opportunity for hearing' cannot be divorced from the phrase 'or in which a hearing is in fact held.' If it were otherwise, every time an agency gratuitously conducted a hearing, a 'contested case' could be spawned. Such an interpretation of § 4-166 (2) would chill, to the detriment of those petitioning the agency, the inclination of an agency to hold any type of an inquiry to gather information when it was not required by statute to do so. We believe, consequently, that the phrase 'or in which a hearing is in fact held' was not intended by the legislature to mean that if a hearing, not required by statute, is in fact held by agency dispensation, it will result in a contested case."

Additionally, "[a]lthough [a state] agency rule, policy or regulation may require a hearing, that hearing will not qualify the proceedings as a contested case unless the agency is *statutorily* required to determine the legal rights or privileges of the party aggrieved in that proceeding." (Emphasis in original.) *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 704–705; id., 709 (no contested case when gaming policy board held hearing on termination of plaintiff's employment as required by state agency personnel policy). This is because "[t]he 'required by statute' language in § 4-166 (2), if construed according to its commonly approved usage, can only mean that before a proceeding qualifies as a contested case, an agency must be obligated by an act promulgated by the legislature to determine the legal rights, duties or privileges of a party." Id., 706. Moreover, in *Morel* v. *Commissioner of Public Health*, supra, 262 Conn. 236, we concluded that a hearing required by federal regulation, and a state statute mandating compliance with federal regulations, did not rise to the level of a contested case because "[t]he source of the hearing requirement . . . was the federal regulation, not the state statute."

As an initial matter, we set forth the appropriate standard of review. Whether the plaintiffs have a statutory right to appeal from the decision of the department is a question of statutory interpretation over which our review is plenary. See *Missionary Society of Connecticut* v. *Board of Pardons & Paroles*, 272 Conn. 647, 651, 866 A.2d 538 (2005). Relevant legislation and precedent guide the process of statutory interpretation. General Statutes § 1-2z provides that, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

I

The plaintiffs first claim that the trial court improperly concluded that a hearing required to be held by a federal statute does not satisfy the definition of a contested case in § 4-166 (2). The plaintiffs raise two arguments in support of this claim. First, the plaintiffs contend that the term "required by statute" in § 4-166 (2) encompasses federal statutes in addition to state statutes. Alternatively, the plaintiffs claim that the hearing held by the department in the present case was mandated by state statute because General Statutes §§ 22a-171 and 22a-174[8] require the commissioner of

___

[8] General Statutes § 22a-171 provides: "The commissioner shall (1) initiate and supervise programs for the purposes of determining the causes, effect and hazards of air pollution; (2) initiate and supervise state-wide programs of air pollution control education; (3) cooperate with and receive money from the federal government and, with the approval of the Governor, from any other public or private source; (4) adopt, amend, repeal and enforce regulations as provided in section 22a-174 and do any other act necessary to enforce the provisions of this chapter and section 14-164c; (5) advise and consult with agencies of the United States, agencies of the state, political subdivisions and industries and any other affected groups in furtherance of the purposes of this chapter."

environmental protection (commissioner) to implement regulations consistent with the federal Clean Air Act, 42 U.S.C. § 7401 et seq., and, in accordance with these provisions, the commissioner enacted § 22a-174-2a of the regulations, which required a public hearing to be held in the present case. See footnote 4 of this opinion. We disagree.

We begin with a review of the relevant statutory and regulatory provisions. General Statutes § 22a-171 requires the commissioner to "cooperate with and receive money from the federal government" and to "adopt, amend, repeal and enforce regulations as provided in section 22a-174 . . . ." General Statutes § 22a-174 (a) provides in relevant part that the commissioner has the power "to formulate, adopt, amend and repeal regulations to control and prohibit air pollution throughout the state or in such areas of the state as are affected thereby, which regulations shall be consistent with the federal Air Pollution Control Act and which qualify the state and its municipalities for available federal grants. . . ." See footnote 8 of this opinion.

The department issued the stationary source air permits that are the subject of this appeal under § 22a-174-3a (d) of the Regulations of Connecticut State Agencies.[9] Pursuant to § 22a-174-2a of the Regulations of

General Statutes § 22a-174 (a) provides: "The commissioner, in the manner provided in subdivision (1) of section 22a-6, shall have the power to formulate, adopt, amend and repeal regulations to control and prohibit air pollution throughout the state or in such areas of the state as are affected thereby, which regulations shall be consistent with the federal Air Pollution Control Act and which qualify the state and its municipalities for available federal grants. Any person heard at the public hearing on any such regulation shall be given written notice of the determination of the commissioner."

[9] Section 22a-174-3a of the Regulations of Connecticut State Agencies provides in relevant part: "(d) Standards for Granting and Renewing a Permit

"(1) The commissioner may impose conditions on any permit or renewal thereof to ensure compliance with the regulations adopted pursuant to section 22a-174 of the Connecticut General Statutes and the [federal Air Pollution Control] Act.

"(2) A permit or permit renewal shall not be issued unless the commis-

Connecticut State Agencies, the department was required to hold a nonadjudicative public informational hearing on Towantic's application upon the submission of a written request. Moreover, prior to issuing a permit for the construction of a "major emitting facility,"[10] the federal Clean Air Act, 42 U.S.C. § 7475 (a) (2), required a public hearing to be held.[11] See footnote 4 of this opinion.

With this background in mind, we turn to the plaintiffs' claim. At the outset, we note that we "never [previously] have decided whether a hearing required by a *federal statute* would satisfy the definition of a 'contested case' under the [act]." (Emphasis in original.) *Morel* v. *Commissioner of Public Health*, supra, 262 Conn. 235 n.13. It is unclear from the language of § 4-166 (2) whether the phrase "required by statute" encompasses federal statutes, and the legislative history of that provision similarly is ambiguous. Our analysis in *Morel* of the purpose and effect of the "required by statute" provision, however, is instructive. In *Morel*, the plaintiff, an owner of a food store and a licensed vendor under the federal Special Supplemental Food Program for Women, Infants and Children (WIC program), appealed from the decision of the defendant, the commissioner of public health, disqualifying him from participation in the WIC program. Id., 225. The

sioner determines, upon evidence submitted by the owner or operator or otherwise made part of the record, that the owner or operator of the subject stationary source or modification shall comply with the applicable provisions of subdivision (3) of this subsection.

"(3) Before issuance of a permit or permit modification, the owner or operator shall demonstrate, to the satisfaction of the commissioner, that, with respect to the construction and operation of the subject stationary source or modification, the owner or operator . . . [has satisfied certain requirements] . . . ."

[10] See generally 42 U.S.C. § 7479 (1) (defining " 'major emitting facility' ").

[11] The defendants do not dispute that the department was required to hold a hearing in the present case pursuant to the federal Clean Air Act and state regulations.

commissioner of public health administered the WIC program pursuant to General Statutes § 19a-59c, which, we assumed for purposes of the appeal, required compliance with federal law and regulations. Id., 236. Federal regulations required a hearing to be held prior to the plaintiff's disqualification, and the commissioner of public health held a hearing pursuant to these regulations. Id. The plaintiff appealed from the decision of the commissioner of public health to the trial court pursuant to § 4-183, and the trial court sustained the plaintiff's appeal.

On appeal to this court, the commissioner of public health maintained that the plaintiff had not appealed from a final decision in a contested case as required by §§ 4-183 and 4-166. We agreed and reversed the judgment of the trial court. We concluded that the hearing held by the commissioner of public health was not "required by statute" within the meaning of § 4-166 (2) because "[t]he source of the hearing requirement . . . was the federal regulation, not the state statute. Put another way, the state statute that required compliance with federal regulations, which in turn required a hearing, did not mandate a hearing within the meaning of § 4-166 (2). That two step process is simply too slim a statutory reed to support a conclusion that the hearing is statutorily required under the [act]." [12] Id., 236–37. Our

---

[12] We reasoned that this "two step process" is "analogous to a state statute that mandates or authorizes a state departmental commissioner to issue regulations to carry out the purposes of a state program or policy . . . [and that] [a] hearing provided pursuant to a state regulation . . . is not statutorily required for purposes of a final decision under the [act]." (Citations omitted.) *Morel* v. *Commissioner of Public Health*, supra, 262 Conn. 237, citing *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 704–705. We noted that because "an agency's regulatory power derives only from some authorizing or empowering statute . . . any state regulation necessarily finds its authority in a state statute." (Citation omitted.) *Morel* v. *Commissioner of Public Health*, supra, 237–38. "Therefore, if, when a state statute provides for regulatory authority, and pursuant to that authority the regulatory agency provides by regulation for a hearing, that hearing is not statutorily required, a fortiori when a state statute authorizes or mandates compliance with

conclusion further was buttressed by the underlying purpose of the "required by statute" provision in § 4-166 (2). "That purpose rests on 'the desirability of ensuring that the legislature, rather than the agencies, has the primary and continuing role in deciding which class of proceedings should enjoy the full panoply of procedural protections afforded by the [act] to contested cases, including the right to appellate review by the judiciary. Deciding which class of cases qualif[ies] for contested case status reflects an important matter of public policy and the primary responsibility for formulating public policy must remain with the legislature.' " Id., 239, quoting *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 810–11. We noted that the federal regulation at issue in *Morel* could be amended at any time to eliminate the requirement for a hearing and, as such, the "broad, general language of § 19a-59c" could not be construed "as evidencing the kind of legislative policy choice, informing our [act], that lies behind the hearing requirement at issue." *Morel* v. *Commissioner of Public Health*, supra, 262 Conn. 239.

In light of the fact that the underlying purpose of the "required by statute" provision in § 4-166 (2) is to ensure that the legislature makes the public policy determination concerning which class of agency decisions is entitled to judicial review under the state act, we conclude that a hearing required to be held by federal statute does not qualify as a contested case. This is because it is the province of the state legislature, and not Congress, to determine which agency decisions may be appealed to the Superior Court of this state. We agree with the trial court that *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 709, as reiterated in *Morel*, stands for the proposition that "the Connecticut General Assembly,

---

federal regulations, one of which requires a hearing, the hearing is not statutorily required for purposes of the [act]." Id., 238.

because it is elected by the voters in Connecticut, should decide Connecticut public policy . . . [and that it] would have been illogical for the court [in *Lewis*] to have suggested that the Congress of the United States should decide an important issue of state public policy." (Internal quotation marks omitted.)

We next consider the plaintiffs' claim that the hearing held in the present case was mandated by state statute because §§ 22a-171 and 22a-174 required the enactment of state regulations in compliance with the federal Clean Air Act, which, in turn, required a hearing to be held on Towantic's application for stationary source air permits. We reject this claim because the source of the hearing requirement was the federal statute and concomitant state regulation, not the state statute. Put another way, the state statute that required compliance with the federal Clean Air Act, which in turn required a hearing, did not mandate a hearing within the meaning of § 4-166 (2). As we observed in *Morel*, that "two step process is simply too slim a statutory reed to support a conclusion that the hearing is statutorily required under the [act]." *Morel* v. *Commissioner of Public Health*, supra, 262 Conn. 237. We conclude that §§ 22a-171 and 22a-174 "merely [refer] to the requirement of governing federal law . . . [and] the federal government could at any time amend [that federal law] to eliminate the requirement for such a hearing. Under these circumstances, we do not read the broad, general language of [our state statutes] as evidencing the kind of legislative policy choice, informing our [act], that lies behind the hearing requirement at issue." Id., 239. Accordingly, the trial court properly determined that the plaintiffs had not appealed from a "final judgment" in a "contested case" as those terms are defined by § 4-166 (2) and (3).

## II

The plaintiffs next claim that P.A. 04-94, which amended the definition of a contested case in § 4-166 (2) to include an agency decision rendered after a hearing required to be held by "*state* statute *or regulation*"; (emphasis added); retroactively applies to their appeal because it clarifies the original intent of the legislature or, alternatively, implements a procedural, rather than a substantive, change in the law.[13] We disagree.

### A

We first address the plaintiffs' claim that P.A. 04-94 clarifies the original intent of the legislature that an agency decision rendered after a hearing required to be held by state regulation constitutes a contested case within the meaning of § 4-166 (2).[14] "We presume that,

[13] The plaintiffs did not raise this claim before the trial court, but we conclude, nonetheless, that we are bound to review it pursuant to Practice Book § 60-5. The *following facts are pertinent to our resolution of this issue.* On December 12, 2003, the defendants moved to dismiss the plaintiffs' appeal, and on February 23, 2004, the trial court held a hearing on the defendants' motion. Thereafter, on May 10, 2004, the legislature enacted P.A. 04-94. Approximately two months later, on July 28, 2004, the trial court dismissed the plaintiffs' appeal for lack of subject matter jurisdiction and rendered judgment in favor of the defendants. On October 1, 2004, P.A. 04-94 became effective. The plaintiffs, in their brief to this court, claim that they were "entirely unaware of [P.A.] 04-94 . . . until November 19, 2004, at the pretrial conference on [their] appeal filed August 13, 2004."

Practice Book § 60-5 provides in relevant part that "[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial *or arose subsequent to the trial.*" (Emphasis added.) Because P.A. 04-94 was enacted *after* the trial court's hearing on the defendants' motion to dismiss and became effective *after* the trial court had rendered judgment in favor of the defendants, we conclude that the plaintiffs' claim concerning the alleged retroactivity of the Public Act arose subsequent to the proceedings in the trial court. Accordingly, we review the plaintiffs' claim pursuant to Practice Book § 60-5.

[14] The plaintiffs also claim that P.A. 04-94 clarifies the original intent of the legislature that any hearing held in fact qualifies as a contested case, regardless of whether the hearing was required to be held, or was held gratuitously. In support of this claim, the plaintiffs rely on the legislative history of the amendment. See, e.g., 47 S. Proc., Pt. 5, 2004 Sess., pp. 1349–50, remarks of Senator Andrew J. McDonald ("I believe that the definition

in enacting a statute, the legislature intended a change in existing law. . . . This presumption, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. . . . Furthermore, an amendment

of a contest[ed] case would incorporate both situations where there is a requirement for a hearing or in the separate instance in a case where a hearing was actually held . . . notwithstanding the fact that there was no requirement for such a hearing"). We conclude that the plain amendatory language of P.A. 04-94 does not support the plaintiffs' claim.

It is well established that, "we presume that the legislature is aware of our interpretation of a statute . . . ." (Internal quotation marks omitted.) *State* v. *Miranda*, 274 Conn. 727, 766, 878 A.2d 1118 (2005). Accordingly, the legislature is presumed to be aware of our conclusion in *Summit Hydropower Partnership* that "the phrase 'required by statute to be determined by an agency after an opportunity for a hearing' cannot be divorced from the phrase 'or in which a hearing is in fact held.' . . . [T]he phrase 'or in which a hearing is in fact held' was not intended by the legislature to mean that if a hearing, not required by statute, is in fact held by agency dispensation, it will result in a contested case.' " *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 808; id., 810 (legislative history also supports conclusion because, by adding phrase " 'or in which a hearing is in fact held' . . . legislature was not manifesting its intention to provide judicial review whenever an agency furnished a gratuitous hearing, but sought rather to maintain the rigid requirements for a contested case by eliminating any possible confusion generated by the ambiguous language in *McAuliffe* [v. *Carlson*, 30 Conn. Sup. 118, 303 A.2d 746 (1973)], that a determination by an agency after a hearing was held, without a statutory right to a hearing, would be sufficient to constitute a contested case"); see also *Herman* v. *Division of Special Revenue*, supra, 193 Conn. 382 (rejecting claim that hearing held in fact, but not required by statute, qualified as contested case). Because the plain amendatory language of P.A. 04-94 contains no changes, additions or deletions to indicate that the amended phrase "required by *state* statute or *regulation* to be determined by an agency after an opportunity for hearing" can be divorced from the phrase "or in which a hearing is in fact held"; (emphasis added) see footnote 1 of this opinion; we conclude that P.A. 04-94 neither clarifies nor changes § 4-166 (2) with respect to hearings held gratuitously by an administrative agency. Accordingly, we do not consider extratextual evidence of legislative intent. See General Statutes § 1-2z. To the extent that the plaintiffs invite us to reconsider our conclusion in *Summit Hydropower Partnership*, we decline to do so.

that is intended to clarify the intent of an earlier act necessarily has retroactive effect." (Citation omitted; internal quotation marks omitted.) *Bhinder* v. *Sun Co.*, 263 Conn. 358, 368–69, 819 A.2d 822 (2003). "Because of the legislature's plenary authority to define the scope of administrative appeals . . . we have been especially deferential to statutory changes when the new statute may be characterized as clarifying the administrative law." (Citation omitted; internal quotation marks omitted.) *Toise* v. *Rowe*, 243 Conn. 623, 629, 707 A.2d 25 (1998).

To determine whether the legislature enacted a statutory amendment with the intent to clarify existing legislation, we look to various factors, including, but not limited to (1) the amendatory language; *Greenwich Hospital* v. *Gavin*, 265 Conn. 511, 522, 829 A.2d 810 (2003); (2) the declaration of intent, if any, contained in the public act; see id.; (3) the legislative history; id., 523; and (4) the circumstances surrounding the enactment of the amendment, such as, whether it was "enacted in direct response to a judicial decision that the legislature deemed incorrect"; (internal quotation marks omitted) *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 253 Conn. 683, 693, 755 A.2d 850 (2000); or "passed to resolve a controversy engendered by statutory ambiguity . . . ." *Toise* v. *Rowe*, supra, 243 Conn. 628. "In the cases wherein this court has held that a statutory amendment had been intended to be clarifying and, therefore, should be applied retroactively, the pertinent legislative history has provided uncontroverted support . . . for the conclusion that the legislature considered the amendatory language to be a declaration of the legislature's *original* intent rather than a change in the existing statute." (Emphasis in original; internal quotation marks omitted.) *In re Michael S.*, 258 Conn. 621, 629, 784 A.2d 317 (2001).

In order to contextualize P.A. 04-94, we begin with a brief review of the history of § 4-166 (2). Section 4-166 originally was enacted in 1971, and, at that time, the term contested case was defined as "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a party are *required by law* to be determined by an agency after an opportunity for hearing . . . ." (Emphasis added.) General Statutes (Rev. to 1972) § 4-166 (2). In 1973, the legislature amended the definition of a contested case, in relevant part, by replacing the term "required by law" with the term "required by statute," and adding the phrase "or in which a hearing is in fact held" at the end of the statute. See Public Acts 1973, No. 73-620, § 2. This court previously has concluded that both the plain language and the legislative history of the 1973 amendment "clearly manifested an intent [by the legislature] that only a determination of rights, duties and privileges *required by statute* would constitute a basis for a 'contested case.' "[15] (Emphasis added.) *Lewis* v. *Gaming Policy Board,* supra, 224 Conn. 707. The legislature did not, for purposes relevant to our analysis,[16] again amend § 4-166 (2) until 2004,

[15] In arriving at this conclusion, the court noted that "[t]he phrase 'required by law' is found in the 1961 Model State Administrative Procedure Act, and is also found in the statutes of most other jurisdictions that have adopted the model act. . . . The term 'law' as contained in the contested case provisions in other jurisdictions has a broader meaning than the term 'statute,' and has been interpreted in other jurisdictions to refer generically to any species of law, including constitutional provisions, and agency rules, regulations and policies." (Citations omitted.) *Lewis* v. *Gaming Policy Board,* supra, 224 Conn. 706–707.

[16] We note that in 1988 the legislature excluded from the purview of the definition of a contested case "proceedings on a petition for a declaratory ruling under section 4-176 . . . ." See Public Acts 1988, No. 88-317, § 1. Although this amendment is not relevant to our analysis, we consider it significant that the legislature, when it repealed § 4-166 (2) and affirmatively reenacted the statute, chose not to amend it further in response to prior judicial construction. See *Herman* v. *Division of Special Revenue,* supra, 193 Conn. 382–83 (hearing held gratuitously does not give rise to contested case); *Rybinski* v. *State Employees' Retirement Commission,* supra, 173

when it enacted P.A. 04-94, entitled "An Act Concerning Judicial Review Under the Uniform Administrative Procedure Act." As we already have explained, P.A. 04-94 amended the definition of a contested case to include a hearing required "by *state* statute *or regulation* . . . ." (Emphasis added.)

Because the amendatory language is ambiguous with respect to whether P.A. 04-94 clarifies or changes § 4-166 (2), we look to the legislative history of the amendment and the circumstances surrounding its enactment to ascertain the intent of the legislature. During the floor debate in the Senate, Senator Andrew J. McDonald provided the following summary of Senate Bill No. 293, which eventually became, in amended form, P.A. 04-94: "[T]his is a bill to *clarify* what I think many already understood the law to be, and that is when there is a decision made in an administrative case that is required by statute or regulation, there is a right to appeal such a decision to the Superior Court. The current language of the statutes indicate only when a statute is involved and a hearing is conducted pursuant to that statute is there such an appeal, although many courts understood that to mean hearings that were also required by state regulations that were promulgated pursuant to statutes. So this legislation is intended to *clarify* that both under state statutes and state regulations when a hearing is required, a party would have an opportunity to appeal

Conn. 471 (no contested case because "[n]ot only was there no statutory requirement that 'an opportunity for hearing' be provided, but, as the lower court reasonably concluded from the facts, no hearing was 'in fact held' "); *Taylor* v. *Robinson*, supra, 171 Conn. 698 ("[w]e conclude that there is no statutory requirement that the board of parole determine the eligibility for parole of any particular inmate, and that a parole release hearing is therefore not a 'contested case' to which the provisions of the [act] apply"); *Reitzer* v. *Board of Trustees of State Colleges*, 2 Conn. App. 196, 203, 477 A.2d 129 (1984) (no contested case because although hearing was "required by the [state] constitution . . . [it was] not 'required by statute' under . . . § 4-166 [2]").

a decision to the Superior Court." (Emphasis added.) 47 S. Proc., Pt. 5, 2004 Sess., p. 1344.

The plaintiffs contend that Senator McDonald's remarks establish that the legislature intended P.A. 04-94 to clarify the original intent of the legislature. Although we agree with the plaintiffs that Senator McDonald's remarks are probative of legislative intent, we disagree that they are dispositive. In our search to discern the intent of the legislature, we thoroughly examine and weigh *all* extratextual evidence of legislative intent. Although we afford substantial weight to a legislator's description of the clarifying purpose of a statutory amendment, we do so only if the description is direct and unequivocal and there is no indication of a contrary legislative intent. See, e.g., *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, supra, 253 Conn. 692 ("[i]n the absence of anything in the scant legislative history of [Public Acts 1999, No. 99-225, § 30], to contradict Representative [Patricia] Widlitz' direct and unequivocal statement regarding the amendment's clarifying purpose, we afford substantial weight to her characterization of its objective and effect"); see also *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 40–41, 699 A.2d 101 (1997) (The court afforded substantial weight to a legislator's unequivocal remark that the purpose of a statutory amendment was "not to change the law, but to clarify what I would consider the law [to be] . . . . It's not saying something different." [Internal quotation marks omitted.]); *State* v. *Magnano*, 204 Conn. 259, 281–82, 282 n.11, 528 A.2d 760 (1987) (relying on multiple legislators' comments that public act would clarify existing law, would apply retroactively and was enacted in response to prior judicial decisions). As the following extratextual sources reveal, there is abundant evidence to indicate that, contrary to Senator McDonald's remarks, the

legislature did not intend P.A. 04-94 to clarify the definition of a contested case in § 4-166 (2).

During the floor debate in the House of Representatives, Representative Christopher R. Stone described the effect of Substitute Senate Bill No. 293 as follows: "[T]his bill would also further define contested cases as those cases in which the [s]tate agency . . . has, through regulation or by statute, created a substantive due process right of appeal as well. We're taking [§ 4-166] and including . . . [s]tate statutes and regulations as those proceedings in which an appeal can be taken. What we have at the administrative level is agencies which are making substantive decisions on behalf of individuals and then, if that decision is a negative one, those individuals under the [act] appeal to that very same agency. It was the opinion of the [j]udiciary [c]ommittee and the [a]dvocates that in those cases we really should have the next step. The next right of appeal to the court in order for those substantive rights to be adjudicated should the administrative agency rule against that individual. For those reasons . . . I urge my colleagues to support the bill. It creates no more substantive rights than already exist. *It does create an additional procedural right* to make sure that the decision of the administrative agency was and is the correct one." (Emphasis added.) 47 H.R. Proc., Pt. 7, 2004 Sess., pp. 2003–2004. *"No such right, no such judicial review of those contested cases exists presently. So we created that right, procedural right, in this statute."* (Emphasis added.) Id., p. 2006, remarks of Representative Stone.

During the joint standing committee hearings on Senate Bill No. 293, Nyle Davey, chairman of the Connecticut Bar Association's Administrative Law Section (section), testified as follows: "The [s]ection is not opposed to the insertion of the word 'state' referring to state statute. That would clarify an issue that the state model Administrative Procedures Act is intended

to reach only those hearings required by a state statute. The [s]ection is also not opposed to inserting '*or regulation.*' That is an issue which has been the subject of some litigation and *is clearly, under the current law, not an allowable source to be within the definition of a contested case.*"[17] (Emphasis added.) Conn. Joint Standing Committee Hearings, Pt. 4, 2004 Sess., p. 1210. Davey's testimony prompted Representative Gail K. Hamm to remark that she was "not comfortable" with adding the word regulation to § 4-166 (2), stating: "[I]f [the agency decision is] important enough to decide that the issue should be formalized in a full hearing process leading to an appeal, it should be in [the] state statute and the specific case that I'm referring to is the one that's mentioned, [*Terese B.* v. *Commissioner of Children & Families*, 68 Conn. App. 223, 789 A.2d 1114 (2002)], which is the [department of children and families] case with foster parents having the right to a hearing, which was never in [the] statute. Now, without taking a position one way or another on whether or not it should have been, certainly that's the kind of issue that this General Assembly should be making as a matter of public policy. And now if you've all agreed that because it was part of the [department of children

---

[17] The plaintiffs maintain that these remarks support their claim that P.A. 04-94 clarifies the original intent of the legislature because Davey testified that the amendment would "*clarify* an issue that the state model Administrative Procedures Act is intended to reach only those hearings required by a state statute." (Emphasis added.) Conn. Joint Standing Committee Hearings, Pt. 4, 2004 Sess., p. 1210. We reject this claim because that portion of Davey's testimony plainly refers to the proposed addition of the word "state," and not the word "regulation," to § 4-166 (2). Thus, Davey points out that limiting the definition of a contested case to hearings required to be held by "*state* statute"; (emphasis added) id.; would resolve the existing question of whether hearings required to be held by federal statute, but not by state statute, give rise to a contested case under § 4-166 (2). See, e.g., *Morel* v. *Commissioner of Public Health*, supra, 262 Conn. 235 n.13 ("we never have decided whether a hearing required by a *federal statute* would satisfy the definition of a 'contested case' under the [act]" [emphasis in original]); see also part I of this opinion.

and families'] regulations it can just *suddenly be appealed*, that's of real concern because that's the kind of public policy decisions that we should be making, that should not be made by regulators."[18] (Emphasis added.) Conn. Joint Standing Committee Hearings, supra, p. 1215. Davey testified that "the [s]ection's response would be that your concern reflects *the wisdom of the existing law that says a regulation is not sufficient*." (Emphasis added.) Id. This testimony reveals the clear understanding that, under the then existing law, a hearing required to be held by regulation did not give rise to a contested case and that enactment of P.A. 04-94 would change the law to provide persons aggrieved in such proceedings with a right of appeal.

The following legislative documents similarly reveal a legislative intent to change, rather than clarify, the existing law. Senate Bill No. 293, which eventually became in amended form P.A. 04-94, contains the following relevant statement of purpose: "To provide for the right to judicial review of administrative agency hearings in cases in which the right to a hearing derives from . . . state . . . regulation."[19] See Raised Bill No.

---

[18] In *Terese B.* v. *Commissioner of Children & Families*, supra, 68 Conn. App. 225, the plaintiff challenged the removal of a foster child from her home by the defendant, the department of children and families. The defendant held a hearing on the propriety of the foster child's removal, as required by state regulation. Id. The defendant concluded that the removal was proper, and the plaintiff appealed from the defendant's decision to the trial court pursuant to § 4-183. The trial court dismissed the plaintiff's appeal for lack of subject matter jurisdiction because the plaintiff had not appealed from a final decision in a contested case. The Appellate Court affirmed the decision of the trial court, in relevant part, because the hearing held by the defendant was not required by statute. Id., 236–37 ("The applicable statute itself must provide for a hearing. If it does not, a contested case does not arise, and a plaintiff's right to appeal is not protected by statute."), citing *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 706.

[19] Senate Bill No. 293 proposed to extend contested case status to a hearing "required by *state or federal* statute *or regulation*," the italicized words indicating the new language, and, therefore, the stated purpose of the bill was "[t]o provide for the right of judicial review of administrative agency hearings in cases in which the right to a hearing derives from *federal statute*

293, February 2004 Sess.; see also *Burge* v. *Stonington*, 219 Conn. 581, 593, 594 A.2d 945 (1991) (considering statement of purpose in bill to discern legislative intent). The judiciary committee, which favorably reported an amended version of Senate Bill No. 293 to the House of Representatives; see footnote 19 of this opinion; articulated the following purpose of the bill in its report: *"Currently there is no right to judicial review of agency administrative decisions even where the law is misinterpreted or decisions not based upon facts, except where explicitly required in the statutes. The bill allows for judicial review of state agency administrative decisions even when a hearing is not explicitly required by state statute."* (Emphasis added.) Judiciary Committee Report, Substitute Senate Bill No. 293, February 2004 Sess. These documents clearly reveal that the purpose and intent of P.A. 04-94 was to change the existing law and to confer contested case status on agency decisions rendered after a hearing required to be held by state regulation.

Lastly, we examine the circumstances surrounding the enactment of P.A. 04-94. The foregoing review of the legislative history of P.A. 04-94, in addition to the plain language of § 4-166 (2) and this court's long-standing interpretation of that language, does not support an inference that the amendment was intended to clarify the original intent of the legislature. First, P.A. 04-94 reasonably cannot be construed to have been "enacted in *direct response* to a judicial decision that the legisla-

*or state or federal regulation."* (Emphasis added.) Raised Bill No. 293, February 2004 Sess. The judiciary committee, after hearing testimony on the proposed amendatory language, changed the bill to omit reference to federal statutes or regulations. See Judiciary Committee Report, Substitute Senate Bill No. 293, February 2004 Sess. (noting that Davey "opposed the inclusion of the word 'federal' in the definition of a contested case because empowering the federal government to determine when decisions made by the Executive Branch of [Connecticut] can be reviewed by the Superior Court is a decision making authority that should not be yielded").

ture deemed incorrect"; (emphasis added; internal quotation marks omitted) *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services,* supra, 253 Conn. 693; because approximately eleven years elapsed between our express conclusion in *Lewis* v. *Gaming Policy Board,* supra, 224 Conn. 704–705, that a hearing required to be held by an agency rule, policy or regulation does not qualify as a contested case and the enactment of P.A. 04-94. Cf. *Toise* v. *Rowe,* supra, 243 Conn. 628 ("[i]f the amendment was enacted *soon after controversies arose* as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act" [emphasis added; internal quotation marks omitted]). Second, P.A. 04-94 reasonably cannot be considered to have been "passed to resolve a controversy engendered by statutory ambiguity"; id.; because under the plain language of § 4-166 (2) and our consistent interpretation of that language, no controversy existed with respect to whether a hearing required by state regulation qualified as a contested case. Rather, it was *"well established* that one requirement for a final decision in a contested case . . . [was] that any hearing held be *required by statute, not merely by agency rule, regulation or policy."* (Emphasis added.) *Morel* v. *Commissioner of Public Health,* supra, 262 Conn. 234; see also *Lewis* v. *Gaming Policy Board,* supra, 224 Conn. 704–705.

Because there is abundant evidence to contradict Senator McDonald's remarks that P.A. 04-94 was intended to "clarify what . . . many already understood the law to be"; 47 S. Proc., supra, p. 1344; we conclude that the amendment is not clarifying legislation. After thoroughly examining and weighing the amendatory language of P.A. 04-94, its legislative history and the circumstances surrounding its enactment, it is apparent that the objective and the effect of the amendment was to establish a right of judicial review that did not exist under the then existing statutory scheme.

Accordingly, we conclude that P.A. 04-94 changes, rather than clarifies, the definition of a contested case in § 4-166 (2).

### B

Having determined that P.A. 04-94 is not clarifying legislation, we next address whether it implements a procedural change in the law that presumptively applies to the plaintiffs' appeal retroactively. General Statutes § 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." "The obligations referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . The rule is rooted in the notion that it would be unfair to impose a substantive amendment that changes the grounds upon which an action may be maintained on parties who have already transacted or who are already committed to litigation. . . . In civil cases, however, unless considerations of good sense and justice dictate otherwise, it is presumed that procedural statutes will be applied retrospectively. . . . Procedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact. . . . [A]lthough we have presumed that procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary . . . a statute which, in form, provides but a change in remedy but actually brings about changes in substantive rights is not subject to retroactive application. . . . While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of

enforcing such rights or obtaining redress." (Citations omitted; internal quotation marks omitted.) *D'Eramo v. Smith*, 273 Conn. 610, 620–21, 872 A.2d 408 (2005).

It is well established that a statutory amendment that creates a right of appeal, where one did not exist previously, constitutes a substantive change in the law. See *In re Michael S.*, supra, 258 Conn. 630 (statutory amendment providing for direct appeal from juvenile transfer order is substantive); *In re Judicial Inquiry No. 85-01*, 221 Conn. 625, 632, 605 A.2d 545 (1992) (statutory amendment's "provision for a direct appeal to the Appellate Court, where no such appeal previously existed, constitutes a substantive change in the law"); see also *In re Daniel H.*, 237 Conn. 364, 373, 678 A.2d 462 (1996) (statutory amendment removing right to direct appeal from juvenile transfer order is substantive). Because an individual aggrieved by an administrative agency's decision cannot appeal to the Superior Court unless there is a contested case as defined in § 4-166 (2), and because P.A. 04-94 provides for a broader class of contested cases than existed previously; see *Morel v. Commissioner of Public Health*, supra, 262 Conn. 236–37; *Lewis v. Gaming Policy Board*, supra, 224 Conn. 704–705; the amendment creates a right of appeal that did not exist under the prior statutory scheme. Accordingly, we conclude that P.A. 04-94 implements a substantive change in the law.

The plaintiffs claim, however, that concerns unique to criminal proceedings lead this court to conclude in *In re Michael S.*, *In re Judicial Inquiry No. 85-01*, and *In re Daniel H.*, that a statutory amendment creating or removing the right of appeal implements a substantive change in the law.[20] In support of this claim, the plain-

---

[20] The plaintiffs also claim that P.A. 04-94 is procedural in nature because § 4-166 (2) simply defines the term contested case and does not create a right of appeal. We reject this claim. We recognize that § 4-183 (a), and not § 4-166 (2), creates a right of appeal to the Superior Court for parties aggrieved by an administrative agency's decision. The plain language of § 4-183 (a) pro-

tiffs point out that criminal statutes must be construed strictly against the state, and that the ex post facto clause of the federal constitution prohibits the retroactive application of criminal statutes. We are not persuaded. In *In re Michael S.*, *In re Judicial Inquiry No. 85-01*, and *In re Daniel H.*, the court did not rely on the principle of strict construction or the ex post facto clause to conclude that the creation or removal of the right of appeal implements a substantive change in the law; rather, we relied on the general principle that, "statutes that effect substantial changes in the law do not apply in pending actions unless it clearly and unequivocally appears that such was the legislative intent . . . and we have consistently expressed our reluctance to give such statutes retroactive application." (Citations omitted; internal quotation marks omitted.) *In re Judicial Inquiry No. 85-01*, supra, 221 Conn. 632. Accordingly, the plaintiffs' attempt to distinguish the present case from *In re Michael S.*, *In re Judicial Inquiry No. 85-01*, and *In re Daniel H.*, is unavailing.

The plaintiffs next claim that we have concluded previously that the right of appeal under the act is procedural in nature. In support of this claim, the plaintiffs rely on the following language in *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 810, and *Morel* v. *Commissioner of Public Health*, supra, 262 Conn. 239: "the legislature, rather than the agencies, has the primary and continuing role in deciding which class of proceedings should enjoy the full panoply of *procedural protections* afforded by the [act] to contested cases, *including the right to appellate review by the judi-*

vides, however, that judicial review is available only if an agency renders a "final decision," and § 4-166 (3) (A) defines a "final decision" as an "agency determination in a contested case . . . ." See footnote 1 of this opinion. Accordingly, a statutory amendment that expands the definition of a contested case plainly expands the right of appeal under § 4-183 (a).

*ciary.*" (Emphasis added; internal quotation marks omitted.) The plaintiffs' reliance on *Summit Hydropower Partnership* and *Morel* is misplaced. In those cases, we did not consider whether a statutory amendment conferring a new right of appeal under the act was substantive or procedural in nature; rather, we simply acknowledged that it was within the power of the legislature to determine the circumstances under which an individual aggrieved by an administrative agency's decision has a right to obtain judicial review. See, e.g., *Lewis* v. *Gaming Policy Board,* supra, 224 Conn. 699–700 (no inherent right to appeal from decision of administrative agency). Thus, despite our broad language in *Summit Hydropower Partnership* and *Morel,* those cases do not support the proposition that the right of appeal under the act is procedural.

Because P.A. 04-94 implements a substantive change in the law, it is presumed to apply prospectively only. This presumption "may be rebutted only by a clear and unequivocal expression of legislative intent to the contrary." *In re Daniel H.,* supra, 237 Conn. 376. Because neither the language of P.A. 04-94 nor its legislative history express a clear and unequivocal intent for the amendment to apply retrospectively; see part II A of this opinion; the presumption of prospective application cannot be rebutted. See *D'Eramo* v. *Smith,* supra, 273 Conn. 624 (general remarks of legislators concerning effect of legislation does not constitute clear and unequivocal expression of legislative intent). Accordingly, P.A. 04-94 does not apply to the present case, and the trial court properly dismissed the plaintiffs' appeal for lack of subject matter jurisdiction.

The judgment is affirmed.

In this opinion the other justices concurred.