******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# CLEARVIEW ELECTRIC, INC. *v.* PUBLIC UTILITIES REGULATORY AUTHORITY
## (SC 21121)

Mullins, C. J., and D'Auria, Ecker, Alexander,
Dannehy and Bright, Js.

*Syllabus*

Pursuant to the Uniform Administrative Procedure Act (§ 4-166 (5) (A)), a "final decision" is "the agency determination in a contested case," and a "contested case," for purposes of that act (§ 4-166 (4)), is "a proceeding . . . in which the legal rights, duties or privileges of a party are required by state statute or regulation to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ."

The plaintiff electric supplier, C Co., appealed from the judgment of the trial court, which had dismissed C Co.'s administrative appeal from the denial by the defendant, the Public Utilities Regulatory Authority (PURA), of C Co.'s motion to withdraw its electric supplier license. In 2014, PURA had opened a docket to redesign the standard billing format for residential customers, and, in 2023, PURA issued a final decision in that docket, allocating the cost of the redesign among the state's licensed electric suppliers and ordering C Co. specifically to pay an assessment of approximately \$179,000. Prior to that 2023 allocation decision, C Co. had entered into a settlement agreement pursuant to which C Co. agreed, inter alia, to voluntarily withdraw from the Connecticut electric supplier market for six years in order to resolve certain allegations and claims against it. Shortly after PURA issued its allocation decision, C Co. filed the motion to withdraw its electric supplier license. PURA denied the motion without prejudice and directed C Co. to pay the assessment. The trial court dismissed C Co.'s administrative appeal from PURA's ruling on the motion to withdraw for lack of subject matter jurisdiction, concluding, inter alia, that PURA's denial of C Co.'s motion to withdraw its license was not appealable under the provision (§ 4-183 (a)) of the Uniform Administrative Procedure Act allowing appeals from final agency decisions insofar as PURA's ruling was not a final decision in a contested case for purposes of § 4-166 (4) and (5) (A). On appeal to this court, C Co. claimed that the trial court had incorrectly concluded that it lacked subject matter jurisdiction over C Co.'s administrative appeal. *Held*:

C Co. waived its claim that PURA's denial of C Co.'s motion to withdraw its electric supplier license constituted a declaratory ruling that, pursuant to statute (§ 4-176 (h)), would have been an appealable final decision for purposes of § 4-183 (a).

C Co. expressly pleaded and argued in its administrative appeal before the trial court that PURA had not issued a declaratory ruling, and, because C Co. took a position in the trial court that was contrary to its claim on appeal

from the trial court's judgment, it waived any claim that the trial court had incorrectly determined that PURA did not issue a declaratory ruling.

C Co. could not prevail on its claim that PURA's denial of C Co.'s motion to withdraw its electric supplier license was a final decision in a contested case, for purposes of § 4-166 (4) and (5) (A), that was appealable under § 4-183 (a), as none of the statutory provisions (§§ 16-41 and 16-245 (f) and (k)) on which C Co. relied in support of its claim required PURA to determine C Co.'s right to withdraw its license through an opportunity for a hearing.

With respect to § 16-245 (f), although that provision provides a statutory right to a hearing on an application for an electric supplier license, its plain language does not require that PURA hold a hearing on a request to withdraw such a license, and the fact that C Co. had filed its motion to withdraw under the same docket number as its initial license application did not, without more, establish contested case status.

With respect to §§ 16-41 and 16-245 (k), although those provisions require that PURA hold a hearing that is conducted as a contested case before imposing civil penalties, including the suspension or revocation of an electric supplier license, the settlement agreement into which C Co. entered neither required nor contemplated the withdrawal of C Co.'s license but instead required that C Co. stop serving customers in the state, and, accordingly, C Co.'s contention that the proceeding involving the motion to withdraw constituted a license revocation under § 16-245 (k) was unavailing.

Moreover, there was no merit to C Co.'s claim that PURA's order that C Co. pay the assessment as a condition to relinquishing its license operated as a civil penalty that C Co. had a right to contest in a hearing under § 16-41, as that assessment was not a penalty under § 16-41 but, rather, an allocation of costs imposed by PURA, and, although C Co. had a right to a hearing for any civil penalty imposed for its failure to pay the assessment, that was distinct from C Co.'s motion to withdraw its license.

Argued December 11, 2025—officially released April 14, 2026

*Procedural History*

Appeal from a ruling of the defendant denying the plaintiff's request to withdraw its electric supplier license, brought to the Superior Court in the judicial district of New Britain, where the court, *Budzik, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed. *Affirmed.*

*Michael A. Kurs*, with whom were *Liana A. Feinn* and, on the brief, *Dana M. Hrelic* and *Lee D. Hoffman*, for the appellant (plaintiff).

*James B. Zimmer*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (defendant).

*Opinion*

BRIGHT, J. The plaintiff, Clearview Electric, Inc., appeals from the judgment of the trial court dismissing its administrative appeal from the ruling of the defendant, the Public Utilities Regulatory Authority (PURA), which denied the plaintiff's motion to withdraw its electric supplier license. On appeal,[1] the plaintiff claims that the trial court incorrectly concluded that it lacked subject matter jurisdiction over the administrative appeal under General Statutes § 4-183 (a) because the denial of the plaintiff's motion to withdraw its license is either a final decision in a contested case or a declaratory ruling. We disagree and, therefore, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In 2007, the plaintiff was granted an electric supplier license in Docket No. 07-08-17 (licensing docket).[2] In 2014, PURA initiated Docket No. 14-07-19 to redesign the standard billing format for residential customers (billing format docket). See General Statutes § 16-245d (a) (2).[3] In December, 2018, PURA issued a decision in the billing format docket, ordering electric

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] PURA's predecessor agency, the Department of Public Utility Control (department), granted the electric supplier license. See Decision and Orders, Department of Public Utility Control, "Application of Clearview Electric, Inc., for an Electric Supplier License," Docket No. 07-08-17 (November 21, 2007) pp. 4–5; see also Public Acts 2011, No. 11-80, § 1 (e) (designating PURA as successor to department, effective July 1, 2011).

[3] General Statutes § 16-245d (a) (2) provides in relevant part: "On or before July 1, 2014, [PURA] shall initiate a docket to redesign (A) the standard billing format for residential customers . . . to better enable such residential customers to compare pricing policies and charges among electric suppliers, and (B) the account summary page of a residential customer located on the electric distribution company's Internet web site. . . ."

distribution companies to redesign the billing system and to submit compliance filings with the itemized costs for the redesign when it was completed (implementation decision).[4] PURA ordered that electric suppliers, such as the plaintiff, would be responsible for the costs associated with the redesign, explaining that it would reopen the billing format docket as a "contested docket" to review the prudency of the costs incurred and to determine the proper allocation of those costs among the suppliers. See General Statutes §§ 16-243p (a),[5] 16-244i (c)[6] and 16-245d (b).[7]

On September 28, 2021, PURA issued a notice of proceeding in the billing format docket, delegating the review of the cost allocation to its Office of Education, Outreach and Enforcement (EOE). Unrelated to that docket, on September 22, 2021, PURA issued a notice of violation and assessed a civil penalty against the plaintiff pursuant to General Statutes § 16-41 for violating various statutory and regulatory requirements related to marketing and customer enrollment.

After requesting a hearing on the notice of violation pursuant to § 16-41 (d), the plaintiff entered into a settlement agreement with the EOE, the Office of Consumer

---

[4] See Decision and Orders, Public Utilities Regulatory Authority, "PURA Investigation into Redesign of the Residential Electric Billing Format—Review of Summary Information, Implementations and Display," Docket No. 14-07-19RE05 (December 19, 2018) p. 36.

[5] General Statutes § 16-243p (a) provides in relevant part: "An electric distribution company may recover its costs and investments that have been prudently incurred as well as its revenues lost resulting from the provisions of . . . [§] 16-245d . . . . [PURA] shall, after a hearing held pursuant to the provisions of chapter 54, determine the appropriate mechanism to obtain such recovery in a timely manner . . . ."

[6] General Statutes § 16-244i (c) provides in relevant part: "[PURA] shall determine billing and metering protocols and any appropriate cost-sharing allocations among electric distribution companies and electric suppliers. . . ."

[7] General Statutes § 16-245d (b) provides: "An electric distribution company that provides billing services for an electric supplier shall be entitled to recover from the electric supplier all reasonable transaction costs to provide such billing services as well as a reasonable rate of return, in accordance with the principles in subsection (a) of section 16-19e."

Counsel, and the Office of the Attorney General to resolve "all allegations and claims currently known and knowable having occurred prior to the date of [the] settlement agreement (not including violations cited in renewable portfolio [standards] dockets and/or alternative compliance payments resulting from the [renewable portfolio standards] Docket No. 21-06-01) and of the allegations and claims" in the notice of violation. The plaintiff agreed to pay $500,000 as a donation and to "voluntarily withdraw from the Connecticut electric supplier market for six . . . years." PURA approved the settlement agreement on November 17, 2021.

On January 13, 2022, in the billing format docket, the EOE issued a request for written comments regarding the costs incurred by the electric distribution companies and potential allocation methods; the plaintiff neither submitted comments nor requested any other opportunity to participate in the proceeding. In August, 2022, the EOE filed a motion in that docket requesting that PURA issue the EOE's proposed final decision approving and allocating the redesign costs. On August 25, 2022, the plaintiff filed an objection to the EOE's motion, claiming that the proposed allocation of costs constituted "an impermissible 'claim' under the [s]ettlement [a]greement" and that PURA should "remove any such claim against [the plaintiff]." On June 22, 2023, PURA granted the EOE's motion and notified the parties that it would post a proposed final decision on its website that day. In addition, PURA noted that the plaintiff's objection to the EOE's motion was "premature" because the plaintiff would have the opportunity to file written exceptions to the proposed final decision before PURA approved a final decision. Although the proposed decision allocated costs to the plaintiff as a third-party electric supplier, the plaintiff did not file any written exceptions to that proposed decision.

PURA issued its final decision in the billing format docket on July 26, 2023 (allocation decision). It found that the electric distribution companies were prudent in implementing the redesign and allocated the associated costs among the licensed electric suppliers, with the plaintiff being ordered to pay $178,832.11 to the electric

distribution companies (assessment).[8] In a footnote in that decision, PURA stated that its prior designation of the proceeding as a contested case was "erroneous" because "the [cost allocation] proceeding does not satisfy the test for a contested proceeding." The plaintiff did not appeal from the allocation decision or otherwise challenge PURA's new designation of the proceeding as an uncontested case.

Two days after the allocation decision was issued, the plaintiff filed a motion to withdraw its electric supplier license in the licensing docket, asserting that it had no outstanding obligations to any state agency. The EOE submitted a response to the motion, noting that the plaintiff remained obligated to pay the assessment pursuant to the allocation decision. The plaintiff, in turn, filed a response to the EOE's claim of an outstanding assessment and an alternative request for a declaratory ruling. In a footnote appended to the title of that document, the plaintiff requested that PURA "treat this filing as a request for a declaratory ruling pursuant to [General Statutes] § 4-176 and [§ 16-1-113 et seq. of] the Regulations of Connecticut State Agencies . . . ." The plaintiff argued that the assessment in the allocation decision "is an impermissible 'claim' under the settlement agreement" and requested that PURA allow it to withdraw its license. The final paragraph stated: "To the extent that [PURA] denies [the plaintiff's] request to withdraw its license, [the plaintiff] requests that [PURA] issue a declaratory ruling that the [assessment] was known and knowable at the time that the settlement [agreement] was negotiated and approved and was, therefore, an impermissible 'claim' under the settlement agreement."

On September 20, 2023, PURA issued a ruling in which it denied the plaintiff's motion to withdraw "without prejudice" and directed the plaintiff to pay

---

[8] PURA allocated one portion of the costs to all third-party electric suppliers licensed to serve residential customers and the other portion to third-party electric suppliers based on each supplier's average number of residential customers during the three years following the implementation decision.

the assessment as ordered in the allocation decision. PURA stated that it would "issue a subsequent ruling on the relinquishment of [the plaintiff's] electric supplier license upon confirmation of [its] payment" of the assessment.

The plaintiff filed an administrative appeal in the Superior Court, challenging the denial of its motion to withdraw its electric supplier license. It alleged, as "grounds for appeal," that "PURA illegally ordered [the plaintiff] to pay the [assessment] and, in doing so . . . violate[d] the [settlement] agreement." The plaintiff also alleged that, because PURA did not address the plaintiff's explicit request for a declaratory ruling under § 4-176, it sought "a declaratory judgment as to the validity of the ruling" denying its motion to withdraw. The plaintiff requested that the court sustain the appeal, allow it to present additional evidence, stay enforcement of the assessment, and allow it to withdraw its license without paying the assessment. The plaintiff also sought, and the trial court granted, a stay of the allocation decision during the pendency of the administrative appeal.

PURA moved to dismiss the administrative appeal for lack of subject matter jurisdiction, arguing that **(1)** the plaintiff was not aggrieved by the ruling denying its motion to withdraw but, rather, sought to challenge the assessment ordered in the allocation decision, **(2)** the ruling denying the plaintiff's motion to withdraw was not appealable under § 4-183 (a) because it was not a final decision in a contested case, and **(3)** the plaintiff failed to follow the statutory procedures for seeking declaratory relief pursuant to General Statutes §§ 4-175 and 4-176 and, therefore, failed to exhaust its administrative remedies.

In its opposition to the motion to dismiss, the plaintiff argued that **(1)** it was aggrieved because it "must pay the sum of $178,832.11," **(2)** the ruling was a final decision because it was issued in the plaintiff's licensing docket, which is a contested case, and **(3)** the plaintiff exhausted its administrative remedies by seeking a declaratory

ruling and, thus, was entitled to a declaratory judgment under § 4-175 because PURA decided not to issue a declaratory ruling under § 4-176. In its reply, PURA argued, among other things, that, for purposes of contested case status, it is irrelevant that the plaintiff's motion to withdraw was filed in the licensing docket because no state statute or regulation requires PURA to afford the plaintiff a hearing on a motion to withdraw an electric supplier license.

After hearing arguments from the parties, the trial court dismissed the administrative appeal for lack of subject matter jurisdiction, concluding that the plaintiff's motion to withdraw its license did not give rise to a contested case. The court also declined to construe the plaintiff's complaint as alleging a declaratory judgment action under § 4-175. PURA, apparently believing the stay of the allocation decision had been lifted as a result of the dismissal, issued a notice of violation pursuant to § 16-41 in the billing format docket in response to the plaintiff's failure to pay the assessment. In accordance with § 16-41 (d), that notice informed the plaintiff that it had the right to a hearing to contest the alleged violation. The plaintiff then sought a second stay of the allocation decision during the pendency of this appeal, which the trial court granted. This appeal followed.

I

The plaintiff first claims that PURA's denial of its motion to withdraw its electric supplier license constituted a declaratory ruling under § 4-176 (h),[9] which is appealable under General Statutes §§ 4-183 (a)[10] and 16-35 (a).[11] It argues that "the record shows that [the

[9] General Statutes § 4-176 (h) provides in relevant part: "A declaratory ruling . . . shall have the same status and binding effect as an order issued in a contested case and shall be a final decision for purposes of appeal in accordance with the provisions of section 4-183. . . ."

[10] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court . . . ."

[11] General Statutes § 16-35 (a) provides in relevant part: "Any person . . . aggrieved by any order, authorization or decision of [PURA] . . .

plaintiff] requested a declaratory ruling in [its] motion [to withdraw] . . . and that PURA rendered such a ruling, even though it did not call it such." In response, PURA argues that the plaintiff waived its claim that PURA issued a declaratory ruling because the plaintiff not only failed to raise its claim before the trial court, but it also took a contrary position in its pleadings in the trial court. In its reply brief, the plaintiff acknowledges that its newly minted appellate claim directly contradicts its argument before the trial court but nevertheless argues that PURA issued a declaratory ruling because it "issued the ruling prohibiting [the plaintiff's] withdrawal of its license, denying the return of its security, and ordering [the plaintiff] to pay [$178,832.11]." We conclude that the plaintiff waived its claim that PURA issued a declaratory ruling by alleging in its complaint and arguing in the trial court that it had sought a declaratory judgment under § 4-175 because PURA did *not* issue a declaratory ruling under § 4-176.

It is well settled under our case law and rules of practice that this court is not "bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 60-5. "[O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." (Internal quotation marks omitted.) *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 142, 84 A.3d 840 (2014). "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, 312 Conn. 714, 761–62, 95 A.3d 1031 (2014).

in any matter to which such person was . . . a party or intervenor, may appeal therefrom in accordance with the provisions of section 4-183. . . ."

Likewise, a party cannot "pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him." (Internal quotation marks omitted.) *Konigsberg* v. *Board of Aldermen*, 283 Conn. 553, 597 n.24, 930 A.2d 1 (2007); see also *Reardon* v. *Windswept Farm, LLC*, 280 Conn. 153, 164–65, 905 A.2d 1156 (2006). "[I]nduced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the [allegedly] erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . [W]hether we call it induced error, encouraged error, waiver, or abandonment, the result—that the . . . claim is unreviewable—is the same." (Internal quotation marks omitted.) *Independent Party of CT—State Central* v. *Merrill*, 330 Conn. 681, 724, 200 A.3d 1118 (2019).

In the present case, the plaintiff alleged in its administrative appeal that, because "PURA did not address [the plaintiff's] request [for a declaratory ruling]," the plaintiff sought "a declaratory judgment as to the validity of the ruling" denying its motion to withdraw its license. In its opposition to PURA's motion to dismiss the appeal, the plaintiff reiterated that PURA "did not address [the plaintiff's] request [for a declaratory ruling]" and highlighted the fact that "[i]t is undisputed that PURA did not issue a declaratory ruling." (Emphasis omitted; internal quotation marks omitted.) Relying on that undisputed fact, the plaintiff claimed that, pursuant to "the express language of § 4-175 [a], PURA . . . decided 'not to issue a declaratory ruling,' and, as such, [the plaintiff] 'may seek in the Superior Court a declaratory [judgment] . . . .' "

The trial court declined to construe the plaintiff's complaint as seeking a declaratory judgment under § 4-175, and the plaintiff does not challenge that determination on appeal. Instead, the plaintiff abandons the theory it pursued in the trial court and asserts for the first time that PURA did, in fact, issue a declaratory

ruling, "even though it did not call it such." Because the plaintiff expressly pleaded and argued in the trial court that PURA did not issue a declaratory ruling, it has waived any claim that the court erred in failing to find that PURA did issue such a ruling.

II

The plaintiff also claims that the denial of its motion to withdraw its license is a final decision in a contested case under § 4-183 (a). We disagree.

"Appeals to the courts from administrative [agencies] exist only under statutory authority . . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed." (Internal quotation marks omitted.) *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, 347 Conn. 317, 328, 297 A.3d 531 (2023). "Deciding which class of cases qualifies for contested case status reflects an important matter of public policy and the primary responsibility for formulating public policy must remain with the legislature." (Internal quotation marks omitted.) Id., 328–29.

Whether the plaintiffs have a statutory right to appeal under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., is a question of statutory interpretation over which our review is plenary. See, e.g., *Middlebury* v. *Dept. of Environmental Protection*, 283 Conn. 156, 166, 927 A.2d 793 (2007). In this regard, we are guided by General Statutes § 1-2z and our case law construing the relevant statutory provisions.

Section 4-183 (a) provides in relevant part that "[a] person who has exhausted all administrative remedies available . . . and who is aggrieved by a final decision may appeal to the Superior Court . . . ." A "final decision" is defined as "the agency determination in a contested case"; General Statutes § 4-166 (5) (A); and a "contested case" is defined as "a proceeding . . . in which the legal rights, duties or privileges of a party are required by state statute or regulation to be determined by an agency after an

opportunity for hearing or in which a hearing is in fact held . . . ." General Statutes § 4-166 (4).

"[I]f an agency is not statutorily required to hold a hearing, but nonetheless holds a hearing gratuitously, a contested case does not arise." *Middlebury* v. *Dept. of Environmental Protection*, supra, 283 Conn. 164. "Additionally, [a]lthough [a state] agency rule, policy or regulation may require a hearing, that hearing will not qualify the proceedings as a contested case unless the agency is *statutorily* required to determine the legal rights or privileges of the party aggrieved in that proceeding. . . . This is because [t]he required by [state] statute [or regulation] language in § 4-166 [4], if construed according to its commonly approved usage, can only mean that before a proceeding qualifies as a contested case, an agency must be obligated by an act promulgated by the legislature to determine the legal rights, duties or privileges of a party." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 165.

In the present case, the plaintiff contends that PURA was required by statute to determine its right to withdraw its electric supplier license through an opportunity for a hearing under General Statutes §§ 16-41 and 16-245 (f) and (k). We address each of the plaintiff's arguments in turn.

A

The plaintiff first argues that "PURA issued the ruling through the licensing proceeding which had an opportunity for a hearing. [Section] 16-245 (f) requires that PURA hold public hearings on applications upon the request of any interested party." In other words, the plaintiff argues that, because a hearing is required on a license application, a hearing is required in any subsequent proceeding initiated under the same docket number as the license application.[12] We are not persuaded.

[12] Although not referenced in either of its appellate briefs, during oral argument before this court, the plaintiff's counsel also relied on § 4-166 (9) in support of this argument. Section 4-166 (9) defines "licensing" to

Section 16-245 (f) provides in relevant part that PURA "shall grant or deny a license application not more than ninety days after receiving all information required of an applicant" and "shall hold a public hearing on an application upon the request of any interested party." The plaintiff undoubtedly had a statutory right to a hearing on its license *application* under § 16-245 (f), but the statute does not require that PURA hold a hearing on a motion to withdraw a license. The plain language of § 16-245 (f) does not afford the plaintiff an opportunity for a hearing on its motion to withdraw its license, and the plaintiff provides no analysis, textual or otherwise, to support its argument.

Moreover, the plaintiff's proffered construction—that the statutory right to a hearing on a license application extends to any subsequent proceeding held under the same docket number—would allow an agency or the parties to confer contested case status on any licensing related proceeding simply by initiating the proceeding in a licensing docket. Given that "the legislature, rather than the agencies, has the primary and continuing role in deciding which class of proceedings should enjoy the full panoply of procedural protections afforded . . . to contested cases"; (internal quotation marks omitted) *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 810, 629 A.2d 367 (1993); we cannot conclude that the legislature intended for contested case status—and the attendant

include "the agency process respecting the grant, denial, renewal, revocation, suspension, annulment, *withdrawal* or amendment of a license . . . ." (Emphasis added.) The plaintiff's counsel argued that, because a proceeding on the withdrawal of a license constitutes a licensing proceeding, and because licensing proceedings are contested cases under § 4-166 (4), the proceeding on its motion to withdraw its license necessarily was a contested case. This argument ignores statutory language unambiguously establishing that not all licensing proceedings constitute contested cases. Section 4-166 (4) makes clear that all proceedings, "including . . . licensing," are contested cases only if a state statute or regulation requires "an opportunity for hearing . . . ." Thus, the question remains whether § 16-245 (f) required an opportunity for a hearing on the plaintiff's motion to withdraw its license.

right to judicial review—to depend on the docket in which a proceeding is held.

Consequently, we conclude that § 16-245 (f) does not apply to proceedings on a motion to withdraw a license, and the docket number assigned to a proceeding does not, without more, establish contested case status.

B

The plaintiff also contends that an opportunity for a hearing is required under §§ 16-41 and 16-245 (k). Section 16-245 (k) provides in relevant part that "[a]ny licensee . . . who violates any provision of this section . . . shall be subject to civil penalties . . . in accordance with section 16-41, including . . . the suspension or revocation of such license and a prohibition on accepting new customers following a hearing that is conducted as a contested case . . . ."

Section 16-41, in turn, provides for an opportunity for a hearing before imposing civil penalties. Specifically, PURA must notify a regulated entity of any alleged violation for which a civil penalty is authorized, and such "notice shall include . . . [a] statement of the person's right to a hearing." General Statutes § 16-41 (c) (4). "If a hearing is requested, then, after a hearing and upon a finding that a violation has occurred, [PURA] may issue a final order assessing a civil penalty under this section . . . ." General Statutes § 16-41 (d). "All hearings under this section shall be conducted under sections 4-176e to 4-184, inclusive. The final order of the authority assessing a civil penalty shall be subject to appeal under section 4-183." General Statutes § 16-41 (e).

The plaintiff argues that "[t]he [settlement] agreement required that [the plaintiff] withdraw its license as a result of a notice of violation and the subsequent settlement thereof, and PURA approved and executed [that] agreement. Thus, this mandatory withdrawal of [the plaintiff's] license constitutes a revocation for which

[§ 16-245 (k)] requires a hearing that is conducted as a contested case." **(Footnote omitted.)**

The settlement agreement provides in relevant part that, when "PURA grants the motion to approve this settlement agreement, [the plaintiff] shall immediately voluntarily withdraw from the Connecticut electric supplier market for six . . . years. This voluntary withdrawal will prevent [the plaintiff] from serving any Connecticut customers . . . . [The plaintiff] must notify PURA . . . within ten days of transitioning all of its current customers to standard service . . . . [The plaintiff] will provide not less than thirty . . . days' advance notice to PURA if and when it seeks to [reenter] the Connecticut market after six . . . years. . . ."

The settlement agreement neither requires nor contemplates the withdrawal of the plaintiff's license. Although the plaintiff's voluntary withdrawal from the electric supplier market prevented it from serving customers in Connecticut, the plaintiff retained its license and could reenter the market after six years. Because the settlement agreement does not impose a mandatory withdrawal of the plaintiff's license, the plaintiff's contention that the proceeding on the motion to withdraw constituted a license revocation under § 16-245 (k) is unavailing. Accordingly, the hearing requirements under §§ 16-41 and 16-245 (k) do not apply to the plaintiff's motion to withdraw its license.

C

Finally, the plaintiff argues that PURA's "order to pay the [assessment] as a condition precedent to relinquishment of [the plaintiff's] license operates as a penalty that [the plaintiff] has a right to contest in a hearing" under § 16-41. The plaintiff further argues that PURA can no longer take the position that it was not entitled to a hearing because, the day after the trial court dismissed the administrative appeal, PURA issued a notice of violation under § 16-41 based on the plaintiff's failure to pay the assessment ordered in the allocation decision. According

to the plaintiff, the notice of violation "unequivocally proves [that the plaintiff] has and had a right to a hearing to challenge the payment penalty."[13] We find this argument unpersuasive because it conflates two distinct proceedings.

As previously noted in this opinion, PURA ordered the plaintiff to pay $178,832.11 in the allocation decision. The plaintiff then filed its motion to withdraw its license in the licensing docket. PURA denied the motion and directed the plaintiff to pay the assessment previously ordered in the allocation decision. Although the plaintiff argues that PURA imposed a penalty when it directed the plaintiff to pay the assessment, that is not the case.

PURA did not impose any new obligation on the plaintiff when it denied the motion to withdraw because the assessment already had been ordered in the allocation decision, which the plaintiff never challenged.[14] That assessment is not a penalty under § 16-41; it is an allocation of costs imposed by PURA pursuant to §§ 16-244i (c) and 16-245d (b), without regard to a violation of any statute, regulation or order. In contrast, the plaintiff's failure to pay the assessment as ordered by PURA in the allocation decision constitutes a violation for which a civil penalty is authorized under § 16-41. That is why PURA

---

[13] In its reply brief, the plaintiff argues that the denial of its motion to withdraw constitutes a penalty because, as a result, the plaintiff "has been deprived of the return of its security and has been forced to continue to operate in the state." Because this argument was neither raised in the trial court nor argued in the plaintiff's principal brief, we decline to address it. See, e.g., *Benjamin* v. *Corasaniti*, 341 Conn. 463, 476 n.8, 267 A.3d 108 (2021) ("arguments cannot be raised for the first time in a reply brief" (internal quotation marks omitted)).

[14] The plaintiff argues that, before the ruling on the motion to withdraw, it "had every reason to believe it had satisfied its obligations as a licensee by its 2021 settlement and no reason to participate in the uncontested cost allocation [proceeding] . . . ." The plaintiff's initial objection to the EOE's proposed allocation decision and PURA's order in response thereto undermine the plaintiff's suggestion that it had "no reason" to have participated in the cost allocation proceeding. In addition, although PURA later claimed that the cost allocation proceeding was an uncontested case, PURA originally noticed the proceeding as a contested case in which the plaintiff had an opportunity to be heard.

notified the plaintiff that it had the right to a hearing to challenge the alleged violation of the allocation decision. The fact that the plaintiff has a right to a hearing on the notice of violation, however, does not establish that the plaintiff had a right to a hearing on its motion to withdraw its license. The notice of violation proceeding involves the imposition of a civil penalty, whereas the denial of a motion to withdraw a license involves no such civil penalty. Because PURA's denial of the plaintiff's motion to withdraw did not involve the imposition of civil penalties pursuant to § 16-41, that statute did not require PURA to afford the plaintiff an opportunity for a hearing on the motion.

Consequently, in the absence of a statutory right to a hearing on the plaintiff's motion to withdraw, the proceeding thereon is not a contested case under the UAPA. Thus, the trial court properly dismissed the plaintiff's administrative appeal for lack of subject matter jurisdiction.

The judgment is affirmed.

In this opinion the other justices concurred.